IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| W&O SUPPLY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:19-CV-00153 |
| | § | |
| BRANDON PITRE, TOBI JOHNSON, | § | Hon. Kenneth M. Hoyt |
| WILLIAM TERRY, WILLIAM FULLER, | § | JURY TRIAL DEMANDED |
| and INDEPENDENCE VALVE & | § | |
| SUPPLY, LLC | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND REQUEST FOR PRELIMINARY <u>INJUNCTION</u>**

Defendants Brandon Pitre ("Pitre"), Tobi Johnson ("Johnson"), William Terry ("Terry"), William Fuller ("Fuller"), and Independence Valve & Supply, LLC ("Independence") (collectively "Defendants"), submit this Memorandum in support of their Motion to Dismiss Plaintiff's Amended Complaint and Request for Preliminary Injunction ("Amended Complaint") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and in support shows the Court as follows.

### I. <u>INTRODUCTION</u>

1. The Court should dismiss Plaintiff's Amended Complaint because Plaintiff has not plead the existence of enforceable Non-Compete Agreements and has not plead a valid claim for reformation under the Texas Covenants Not to Compete Act.

2. Defendants Pitre, Johnson, Terry, and Fuller are former employees of Plaintiff. Plaintiff complains that Defendants Pitre, Johnson, Terry, and Fuller left their employment with

1

Plaintiff and began a competing business, Defendant Independence Valve & Supply, LLC, in violation of Non-Compete Agreements signed by Pitre, Johnson, Terry, and Fuller when they began employment with Plaintiff. However, Plaintiff has plead no facts, and cannot plead a set of facts, supporting the enforceability of the Non-Compete Agreements under Texas law. The Non-Compete Agreements attached to Plaintiff's Amended Complaint do not contain a temporal limitation as required by the Texas Covenants Not to Compete Act (the "Act"). Tex. Bus. & Com. Code §15.05(a). Although Plaintiff has plead for reformation of the Non-Compete Agreements, the reformation statute does not permit this Court to reform a non-compete agreement to insert a temporal limitation where one does not exist. Tex. Bus. & Com. Code §15.51(c).

3. Because the restrictive covenant in this case is missing the statutorily required temporal limitation term and Plaintiff is not entitled to reformation of the Non-Compete Agreements under the Act, Plaintiff has failed to state a claim upon which relief can be granted and its Amended Complaint must be dismissed.

## II. RELEVANT FACTUAL BACKGROUND

4. Plaintiff asserts a claim for breach of contract seeking specific performance based on four "Non-Compete Agreements" which Defendants Pitre, Johnson, Terry, and Fuller signed in connection with their employment with Plaintiff. (Doc. 27 at ¶ 22).[1] Plaintiff also brings a claim for tortious interference with contract against Defendant Independence in relation to the same four "Non-Compete Agreements." (*Id.* at ¶ 32).

### A. *Statutory Framework of the Texas Covenants Not to Compete Act*

5. Generally, under Texas law any "contract, combination, or conspiracy in restraint of commerce is unlawful." Tex. Bus. & Com. Code §15.05(a). However, notwithstanding Section

---

[1] The Non-Compete Agreements make reference to the application of Florida law. However, it is undisputed that Texas law governs the enforcement of the Non-Compete Agreements in this case.

15.05, the Texas Covenants Not to Compete Act permits restraints on trade provided the restrictive covenant meets the "Criteria for Enforceability of Covenants Not to Compete" contained in Section 15.50(a) of the Act. Specifically, to be enforceable under the Act the covenant must (1) be ancillary to or part of an otherwise enforceable agreement at the time the agreement was made; and (2) contain limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. Tex. Bus. & Com. Code §15.05(a) (emphasis added).

6.  The Act permits a court to reform a restrictive covenant if it is ancillary to an otherwise enforceable agreement, but the limitations as to time, geographical area, and scope of activity contained in the restrictive covenant are unreasonable as written. Tex. Bus. & Com. Code § 15.51(c). Under the plain language of Section 15.51(c) of the Act, reformation is not appropriate for a statutorily required term that is not contained in the covenant. The legislative history of the Act demonstrates that inclusion of the words "contains" and "contained" in Section 15.51(c) are important to the operation of the statute.

7.  In 1989 the 71st Texas Legislature enacted the Act, which created Sections 15.50 and 15.51 of the Texas Business and Commerce Code. S.B. 946, 71st Leg., Reg. Sess. (Tx. 1989). Section 15.50 was divided into two sub-sections and provided that a non-compete agreement is enforceable if it: (1) is ancillary to or part of an otherwise enforceable agreement, and (2) contains reasonable limitations as to time, geographical area, and scope of activity to be restrained. *Id.*

8.  Section 15.51 originally provided the "procedures and remedies in actions to enforce covenants not to compete." *Id.* As drafted in 1989, Section 15.51(c) stated that if a non-compete agreement satisfied subsection (1) of Section 15.50 but failed to satisfy subsection (2) of Section 15.50, then the court shall reform the non-compete agreement to satisfy subsection (2) at

the request of the employer. *Id.* As originally written, Section 15.51(c) called for courts to reform non-compete agreements if they failed to comply with subsection (2), regardless of whether the required restrictions actually appeared on the face of the covenant. This meant that a non-compete agreement could be reformed regardless of whether the covenant contained overbroad restrictions or failed to contain any of the required restrictions at all.

9. However, in 1993, the Seventy-Third Texas legislature amended the Covenants Not to Compete Act and revised Sections 15.50 and 15.51. H.B. 7, 73rd Leg., Reg. Sess. (Tx. 1993). Section 15.51(c) was revised to add the words "contains" and "contained" with reference to the required restrictions in Section 15.50(a). The revised Section 15.51(c) reads as follows:

> if the covenant is found to be ancillary to or part of an otherwise enforceable agreement but ***contains*** limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise, the court shall reform the covenant to the extent necessary to cause the limitations ***contained*** in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary…

Tex. Bus. & Com. Code § 15.51(c) (emphasis added).

10. By changing the wording of Section 15.51(c), the Texas legislature intended that a non-compete agreement only be reformed to narrow overbroad limitations which are already a part of the covenant. By specifically adding the language "contains limitations" and "limitations contained in the covenant" the Texas legislature makes it clear that Section 15.51 requires that non-compete agreements to contain limitations as to time, geographical area, and scope of activity in order for an overbroad non-compete agreement to be eligible for reformation. *See* Tex. Bus. & Com. Code § 15.51(c).

*B. Plaintiff's Allegations*

11.     Plaintiff brings claims against Defendants Pitre, Johnson, Fuller, and Terry for breach of contract, alleging that Defendants Pitre, Johnson, Fuller, and Terry are in violation of the "Non-Compete Agreements " that Pitre, Johnson, Fuller, and Terry each signed in connection with their employment with Plaintiff. (Doc. 27 at ¶ 22). Plaintiff brings a claim for tortious interference with a contract against Defendant Independence alleging that Independence interfered with Plaintiff's relationships with Pitre, Johnson, Fuller, and Terry, and induced them to terminate their employment with Plaintiff and violate their "Non-Compete Agreements." (*Id*. at ¶ 32).

12.     Defendant Teri Johnson worked as an operations manager for Plaintiff's Houston office. Prior to this, she worked as a senior inside sales person. (*Id.* at ¶ 11).  Defendant William Fuller worked as an inside sales manager for Plaintiff. (*Id.* at ¶ 12). Defendant William Terry worked as an outside salesman for Plaintiff. (*Id.* at ¶ 13). Defendant Brandon Pitre worked as a market leader in Plaintiff's Houston office, and acted as general manager of Plaintiff's Houston office. (*Id.* at ¶ 10).

13.     Plaintiff alleges that in connection with their employment Defendants each signed a non-compete agreement (the "Non-Compete Agreements"). (*Id.* at ¶¶ 10-14). While each Defendant signed their own individual non-compete agreement at different times, all of the Non-Compete Agreements contain the same terms. (*Id.* at ¶¶ 10-14).  The Non-Compete Agreements state:

- Employee agrees that, during the term of this employment and in the event of termination (voluntary or involuntary) he/she will not attempt to divert any existing or possible future business of Employer, or assist in any such competition within one hundred (100) miles of any W & O Supply branch operation existing at the time of termination of employment.

- Employee agrees that he/she will not at any time directly or indirectly, either during or after termination of employment, make use of or disclose to any

- person, group or organization, any information and/or details including, but not limited to the names or addresses of any employees or customers of Employer, the details or provisions of any written or oral contract or understanding between employer and nay materials, manuals, forms, techniques, methods, or procedures of Employer used by or made available to Employee in the course of his/her employment.

- Employee further agrees that, immediately upon termination of employment, and prior to final compensation, and/or upon request by Employer at any time, he/she will return to Employer any and all materials including but not limited to employee lists, papers, documents or data (including any and all copies thereof) belonging to or relating to the business of Employer.

(*Id.* at ¶ 14, Ex. A-D).

14. Plaintiff attached the Non-Compete Agreements signed by Defendant's as Exhibits A-D of its Original Complaint and refers to the language of the Non-Compete Agreements in its Original Complaint. (*Id.* at ¶¶ 10-14, Ex. A-D). Plaintiff alleges that in exchange for signing the Non-Compete Agreements, Defendants were granted access to Plaintiff's confidential information. (*Id.* at ¶ 14).

15. Plaintiff alleges that Defendants are now in breach of the Non-Compete Agreements they signed while employed by Plaintiff. (*Id.* at ¶¶ 14, 20-23). However, Plaintiff seeks reformation of the Non-Compete Agreements in the event that the Court determines the Non-Compete Agreements are unenforceable as written. (*Id.* at ¶¶ 24-26).

16. Plaintiff does not allege that the Non-Compete Agreements contain a temporal limitation as required by Section 15.50(a) of the Act. However, Plaintiff seeks specific performance of the Non-Compete Agreements, and requests a temporary and permanent injunction restraining Defendants as follows:

   (a) Pitre, Johnson, Fuller, and Terry, for a period of twenty four (24) months, shall not directly or indirectly, acting alone or in conjunction with others, solicit, take away, or divert, or attempt to divert, any customer of W&O or otherwise interfere with W&O's relationship with any such Customer. Customer is defined as any person, company, or business entity to which

> W&O sells, or has proposed to sell, goods or services and which Johnson, Pitre, Fuller, and Terry had contact with during their employment with W&O.

(*Id.* at ¶ 42).

17. Plaintiff does not allege that Defendants are in possession of or are using Plaintiff's confidential information, nor has it asserted a cause of action related to its confidential information. However, Plaintiff requests that Defendants be restrained as follows:

> (b) Pitre, Johnson, Fuller, and Terry shall maintain the confidentiality of and not disclose "confidential information" received from W&O. "Confidential information" means any information that relates to W&O's actual or anticipated business or research and development, technical data, trade secrets or know-how, the details or provisions of any written or oral contract or understanding between W&O and customers, any materials, manuals, forms, techniques, methods, or procedures of W&O, W&O's Salesforce customer relationship system, W&O's cost of materials, and W&O's sales margins.

(*Id.* at ¶ 42).

18. Plaintiff does not allege that Defendants have destroyed or have threatened to destroy evidence. However, Plaintiff requests that Defendants be restrained as follows:

> (c) Defendants shall be restrained from in any way, directly or indirectly, destroying, deleting, or altering in any form any information or evidence including documents, electronic information including texts, email, voice messages, photographs, and any other electronic data, related to the allegations in the lawsuit.

(*Id.* at ¶ 42).

19. Plaintiff also brings a single claim for tortious interference with a contract against Defendant Independence. (*Id.* at ¶ 31). Plaintiff alleges that "Independence intentionally interfered with such [employment] relationships in that it induced certain W&O employees, Pitre, Jonson, Fuller, and Terry, to terminate their employment with W&O and violate their non-competes with W&O." (*Id.* at ¶ 32). Plaintiff further alleges that Independence acted to harm Plaintiff's business and obtain confidential information of Plaintiff, interfere with Plaintiff's customer relationships.

(*Id.*). However, Plaintiff has not alleged any facts asserting that any Defendants have inappropriately used Plaintiff's confidential information.

### III.    PROCEDURAL HISTORY

20.    On January 7, 2019, Plaintiff filed an Original Petition and Application for Temporary Restraining Order and Temporary Injunction and a Motion for Expedited Discovery in the 133rd District Court of Harris County, Texas.[2]

21.    That same day, a hearing on Plaintiff's application for temporary restraining order was held before the ancillary court. The ancillary judge withheld her ruling on the TRO pending Plaintiff submitting a revise proposed order. Two days later, on January 9, 2019, there was a second hearing on Plaintiff's application for temporary restraining order, and Plaintiff presented a new proposed temporary restraining order to the Court narrowing the scope of the restraining order to certain customers. The court denied Plaintiff's request for temporary restraining order and motion for expedited discovery on the basis that the Non-Compete Agreements are unenforceable.

22.    After being denied a temporary restraining order in state court, on January 15, 2019, Plaintiff non-suited its state court lawsuit and immediately filed its Original Complaint and Request for Preliminary Injunction in this Court.

23.    On February 11, 2019, Defendants Pitre, Johnson, Terry, and Fuller filed their motion to dismiss Plaintiff's Original Complaint and Request for Preliminary Injunction. (Doc. 12). On February 25, 2019, Plaintiff filed its Amended Complaint and Request for Preliminary Injunction, where Independence Valve & Supply, LLC was first added as a Defendant and Plaintiff first brought it claims for tortious interference with a contract against Independence and breach of

---

[2] This Court has already taken judicial notice of the Texas District Court proceeding.

fiduciary duty against Pitre. (Doc. 27). On March 4, 2019, Plaintiff filed its Response to Defendants' Motion to Dismiss arguing in support of their Original Complaint and requesting leave to amend should the Court find that any deficiencies were not addressed in Plaintiff's Amended Complaint and Request for Preliminary Injunction. (Doc. 34). However, because Plaintiff has amended its Complaint once as a matter of course, the Original Complaint and Request for Preliminary Injunction is likely moot.[3]

## IV. STANDARD OF REVIEW

24. "To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement for relief—including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017).

25. In deciding a motion to dismiss, "courts must consider the complaint in its entirety, as well as...documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may properly take judicial notice of publicly available documents and facts that are "not subject to reasonable dispute" and are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b); *see also Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). The Court has already taken judicial notice of Plaintiff's state court filings and denial of a temporary restraining order.

26. Further, Rule 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Failure to comply with Rule

---

[3] Fed. R. Civ. P. 15(a)(1)(B); *Giovinale v. JP Morgan Chase Bank, N.A.*, CV H-16-986, 2017 WL 3535440, at *3 (S.D. Tex. Aug. 17, 2017) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").

8(a) is grounds for a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Complaints must be dismissed when they contain only "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678.

### V. ARGUMENT

27. Plaintiff fails to state a claim for breach of contract and reformation of the Non-Compete Agreements, and tortious interference with a contract under Texas law. In this case, Plaintiff attempts to enforce Non-Compete Agreements that are not only overly broad and unreasonably restrictive, but the covenants are missing the statutorily required time limitation.[4] Plaintiff also attempts to bring a claim for tortious interference with a contract against Independence based on the allegation that Independence interfered with Plaintiff's relationship with the other Defendants and induced Pitre, Johnson, Fuller, and Terry breach the Non-Compete Agreements. Because the Non-Compete Agreements are unenforceable and are barred from being judicially reformed, Plaintiff has failed to adequately plead a claim for relief and its claims for breach of contract and tortious interference with a contract must be dismissed for failure to state a claim under Rule 12(b)(6).

28. The enforceability of a covenant not to compete is regulated by Texas statute and presents a question of law for the court. *Olander v. Compass Bank*, 172 F. Supp. 2d 846, 851 (S.D. Tex. 2001), aff'd, 44 Fed. Appx. 651 (5th Cir. 2002) (citations omitted). "The enforceability of non-compete clauses is governed by the Texas Covenants Not to Compete Act." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 584 (5th Cir. 2015) (citing *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011) ("Covenants that place limits on former employees' professional mobility or restrict their solicitation of the former employers' customers and employees are restraints on trade

---

[4] The Non-Compete Agreements are unenforceable as written because, in addition to not being not reasonable limited in geographic area and scope of activity to be restrained, the Non-Compete Agreements are lacking a time limitation.

and are governed by the Act.")); *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464–65 (5th Cir. 2003) (applying Texas law and stating that non-solicitation covenants restrain trade and competition and are governed by the Act); *Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417, 438–39 (S.D. Tex. 2008) (holding that a "nonsolicitation covenant is also a restraint on trade and competition and must meet the criteria of section 15.50 of the Texas Business and Commerce Code to be enforceable" (citations omitted)).

29. In the case of personal service occupations, such as salespersons, the employer has the burden of establishing that covenants not to compete meet the requirements of Section 15.50. Tex. Bus. & Com. Code § 15.51(b); *see also D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 211 (5th Cir. 2018). Additionally, as a contract, the Non-Compete Agreements are subject to the basic tenants of contract law. A fundamental principle of contract law is that the contract is only enforceable if it reflects the parties' agreement on all material terms. If the contract fails to address a material term, the contract is not enforceable as a matter of law because a court cannot determine the obligations of the parties. *See, e.g.*, *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, (Tex. 1993) ("In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook."); *Richter v. Bank of America National Trust & Savings Assoc.*, 939 F.2d 1176, 1196 (5th Cir. 1991) ("If an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract").

**A.** ***The Non-Compete Agreements Do Not Contain a Time Limitation.***

30. Plaintiff's Complaint fails to state a claim for breach of contract because the Non-Compete Agreements are unenforceable under Sections 15.05 and 15.50 of the Act and cannot serve as the basis for a breach of contract claim. Unless an agreement not to compete is reasonable,

it is a restraint of trade. *Martin v. Credit Protection Ass'n, Inc.*, 793 S.W.2d 667, 668–69 (Tex. 1990). As stated above, the "Criteria for Enforceability of Covenants Not to Compete" requires a restrictive covenant to contain reasonable limitations in time, geographical area, and scope of activity to be restrained that impose restrictions only necessary to protect goodwill and business interest of the employer. Tex. Bus. & Com. Code §15.50 (emphasis added).

31. Plaintiff has not plead the existence of enforceable Non-Compete Agreements. Plaintiff's Complaint fails to make any allegation that the Non-Compete Agreements contain a reasonable time limitation. In fact, rather than address a time limitation, Plaintiff's Complaint attempts to gloss over this requirement, generally stating in conclusory fashion that "paragraphs 2-4 (regarding the restrictive covenants) of the Non-Compete Agreement are valid and enforceable . . . " and "the limitations as sought by W&O set out in these covenants concerning geographic area and scope of activity restrained are reasonable and do not impose a greater restraint than is necessary . . . ." (Doc. 27 at ¶¶ 30-31).

32. Under Texas law, lack of a time limitation, or a time limitation that is potentially indefinite, makes a non-compete agreement unenforceable. *Central State Logistics, Inc. v. BOC Trucking, LLC*, 2018 WL 5662669 *5, (Tex. App.—Houston [1st Dist.] 2018) (citing *Cardinal Pers., Inc. v. Schneider*, 544 S.W.2d 845, 847 (Tex. Civ. App.—Houston [14th Dist.] 1976, no writ)). Unlike the Non-Compete Agreements here, in *Central State Logistics, Inc.*, the covenant at issue had a temporal limitation that barred competition "[f]or a period of twenty four (24) months following the Carrier's last contact with any client or client[s] of Broker. . . ." *Id*. at *4. There the court found the restrictive covenant unenforceable, stating:

> …the covenant lasts for two years after BOC Trucking's last contact with any client of Diligent, regardless of whether BOC Trucking had had any previous interactions with them and regardless of whether the interaction was during

>or after the agreement. This creates the potential for a covenant not to compete that does not end.

*Id*.

33. Similarly, in *Cardinal Pers.*, the covenant not to compete contained a provision that extended the time period from six months after the employee's termination, instead making the agreement last until six months after the employee stopped being in violation of the agreement, "whether voluntarily or by injunction." *Cardinal Pers., Inc.*, 544 S.W.2d at 847. The court held this rendered the time period indeterminable because the time period could be ascertained "only by hindsight; i.e., the duration of the covenant cannot be determined until the jurisdiction of the trial court is invoked and its equity powers exercised." *Id.*

34. Here, the time limitation for the restrictive covenant is likewise indeterminable because Non-Compete Agreements are missing any semblance of a temporal limitation, which is a material term to its enforceability.[5] Like the non-compete restrictive covenants discussed above, the Non-Compete Agreements Plaintiff seeks to enforce are unreasonable indefinite restraints on trade. Moreover, there are no facts plead in the Complaint or provisions of the Non-Compete Agreements that could aid in determining the time period to which the parties are obligated. *See, T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, (Tex. 1993) ("In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook."); *Richter v. Bank of America National Trust & Savings Assoc.*, 939 F.2d 1176, 1196 (5th Cir. 1991) ("If an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract").

---

[5] While non-compete agreements related to the sale of a business need not contain a fixed time limitation, the Non-Compete Agreements at issue in this case are related to employment and not to the sale of a business. *See Oliver v. Rogers*, 976 S.W.2d 792, 800 (Tex. App.— Houston [1st Dist.] 1998, pet. Denied).

35.     Furthermore, and as will be discussed in further detail below, the Court is not statutorily authorized to reform the Non-Compete Agreements because remedying the time limitation issue would require the insertion of a term not bargained for by the Parties rather than the reformation of an unreasonable existing term. Therefore, because the Non-Compete Agreements are unenforceable, they cannot serve as the basis for a breach of contract claim and Plaintiff's cause of action should be dismissed.

### *B.  Plaintiff has failed to state a valid claim for reformation of the Non-Compete Agreements.*

36.     The Non-Compete Agreements are unreasonable restraints on trade and are therefore unenforceable. Plaintiff has not plead the basis for inserting a temporal limitation or from where that limitation should be derived. Plaintiff cannot plead facts showing it is entitled to the relief of reformation of the Non-Compete Agreements because the Act does not permit this Court to create a new temporal limitation that does not already exist in the restrictive covenants. *See* Tex. Bus. & Com. Code §15.51(c).

37.     Section 15.51(c) of the Texas Business and Commercial Code provides that a court shall reform covenants not to compete which contain limitations as to time, scope, and area that are unreasonable and impose a greater restraint than necessary. Tex. Bus. & Com. Code §15.51(c). Prior to the 1993 amendment to the Covenants not to Compete Act, there was no restriction on the reformation of a non-compete agreement lacking reasonable restrictions, and a court could reform a non-compete agreement lacking these restrictions entirely. *See B.J. Software Sys., Inc. v. Osina*, 827 S.W.2d 543, 546 (Tex. App.— Houston [1st Dist.] 1992, no writ). However, as stated above, the Texas legislature intended that a non-compete agreement only be reformed to narrow overbroad limitations which are already a part of the covenant. By specifically adding the language "contains limitations" and "limitations contained in the covenant" the Texas legislature makes it

14

clear that Section 15.51 requires that non-compete agreements contain limitations as to time, geographical area, and scope of activity in order for an overbroad non-compete agreement to be eligible for reformation. *See* Tex. Bus. & Com. Code § 15.51(c). It is the Plaintiff's burden to establish that reformation is appropriate and, if so, what would be a reasonable limitation. *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

38. "The task of statutory interpretation begins and, if possible, ends with the language of the statute." *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013). When interpreting a statute, courts should enforce the law as written. *LasikPlus of Texas, P.C. v. Mattioli*, 418 S.W.3d 210, 220 (Tex. App.—Houston [14th Dis.] 2013) (holding that the court could not add a buy-out provision to a physician non-compete agreement under Tex. Bus. & Com. Code § 15.50(b)). In applying the reformation statute, Texas courts usually have reformed unenforceable restrictive covenants by revising the unenforceable provisions to those that would be reasonable under the circumstances. *See Butler v. Arrow Mirror & Glass, Inc.,* 51 S.W.3d 787, 794 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *GE Betz Inc. v. Moffitt-Johnson*, 301 F. Supp. 3d 668, 687 (S.D. Tex. 2014), aff'd in part sub nom. *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318 (5th Cir. 2018). However, this reformation extends only to existing terms, and there is no authority for adding non-existent terms to reform an agreement, and Plaintiff has offered no authority to support its assertion.

39. While the Act does provide that non-compete agreements may be reformed if the required terms of the agreement are deemed unreasonable, the statute clearly states that the non-compete agreement must "contain limitations" in order for those limitations to be reformed by the

court. Tex. Bus. & Com. Code §15.51(c). It is not the courts duty to create limitations where none previously existed. *LasikPlus of Texas, P.C.* 418 S.W.3d at 220.

40. The Non-Compete Agreements at issue in this matter are lacking a time limitation entirely. If there is no time limitation in a non-compete agreement, then there is nothing for the Court to reform, and the non-compete agreement is simply unenforceable.

### C. Plaintiff has Failed to State a Claim for Tortious Interference with a Contract.

41. Plaintiff alleges that Independence tortiously interfered with a contract by enticing Pitre, Terry, Fuller, and Johnson to breach the Non-Compete Agreements. However, Plaintiff's Amended Complaint fails to state a claim on which relief can be granted because as demonstrated above, the Non-Compete Agreements in this case are unenforceable.

42. In order to prevail in an action for tortious interference with a contract, Plaintiff must plead: "(1) the existence of a contract subject to interference, (2) willful and intentional interference, (3) that proximately causes damage, and (4) actual damage or loss." *GE Betz Inc. v. Moffitt-Johnson*, 301 F. Supp. 3d 668, 669 (S.D. Tex 2014). However, a claim for tortious interference cannot be maintained when it is based on a covenant not to compete which is unreasonable and unenforceable. *Id.* (citing *Lazer Spot, Inc. v. Hiring Partners, Inc.*, 387 S.W.3d 40, 49 (Tex. App. 2012), review denied (Mar. 29, 2013), reh'g overruled (Oct. 30, 2012)).

43. The only contract that Plaintiff alleges Independence interfered with are the Non-Compete agreements of Pitre, Terry, Fuller, and Johnson which make up the basis for Plaintiff's breach of contract claim against those Defendants. As stated above, the Non-Compete Agreements at issue in this matter are unenforceable and cannot be reformed to be enforceable because they not only lack reasonable restraints as to time, geographic area, and scope of activity, but they do not contain any time limitation at all.

44. However, even if the Court rules that the Non-Compete Agreements are eligible for reformation, Plaintiff has still failed to state a claim upon which relief can be granted for tortious interference because the Non-Compete Agreements are clearly lacking a time limitation as required by Section 15.50 and are therefore unenforceable as written. *See* Tex. Bus. & Com. Code § 15.50(a). When a non-compete agreement contains limitations as to time, geographical area, or scope of activity that are overbroad or unreasonable and impose a impose a greater restraint that necessary to protect the interest of an employer, then "the court may not award the promise damages for breach of covenant before its reformation[.]" Tex. Bus. & Com. Code § 15.51(c). Because damages are not available prior to the reformation of an unreasonable non-compete agreement, a claim for tortious interference of a contract cannot be maintained based on a non-compete that is unenforceable as written. *Compass Bank v. Texas Community Bank*, 2010 WL 11506744 *4-5, (W.D. Tex. 2010) (holding that damages are only available for breaches of an unenforceable non-compete agreement post reformation); *Orthoflex, Inc. v. ThermoTek, Inc.*, 2012 WL 2864510, at *6 (N.D.Tex. July 12, 2012) (dismissing claims for tortious interference when damages were only for actions that occurred before reformation of an unenforceable covenant not to compete).

45. Plaintiff's tortious interference claim is based solely on Non-Compete agreements which are unenforceable as written, and Plaintiff is not entitled to damages prior to the reformation of the Non-Compete agreements, even if reformation of the Non-Compete Agreements is appropriate in this matter, which it is not. Therefore, Plaintiff has not plead any recoverable damages, which is required for a claim of tortious interference with a contract, and Plaintiff's claims for tortious interference with a contract must be dismissed as a matter of law.

## VI. CONCLUSION

Plaintiff has failed to allege a valid breach of contract claim or a claim for tortious interference with a contract because it has failed to establish that the Non-Compete Agreements are enforceable under Texas law. The Non-Compete Agreements do not contain a time restriction, and the Texas Covenants Not to Compete Act does not permit reformation of the unenforceable restrictive covenants in this case. Because Plaintiff has failed to state a claim upon which relief can be granted the Court should dismiss Plaintiff's claims for breach of contract and tortious interference in Plaintiff's Amended Complaint and Request for Preliminary Injunction under Federal Rule of Civil Procedure 12(b)(6).

This the 8th day of March, 2019.

Respectfully submitted,

Johnson & Associates
Attorneys at Law, PLLC

By: */s/ Christopher L. Johnson*
    Christopher L. Johnson
    Attorney-in-Charge
    Texas State Bar No. 24069999
    Federal ID No. 1050247
    chris@Johnson-Attorneys.com
    Justin M. Kornegay
    Texas State Bar No. 24077668
    Federal ID No. 1717328
    justin@Johnson-Attorneys.com
    Morgan A. Jenkins
    Texas State Bar No. 24106141
    Federal ID No. 3364193
    morgan@johnson-attorneys.com
    303 East Main Street, Suite 100
    League City, Texas 77573
    Main:281-895-2410
    Fax: 409-263-1020
    COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

      I, herby certify that a true and correct copy of the foregoing has been served on all counsel of record whom have appeared in this case via the Southern District of Texas Electronic Case Filing System on March 8, 2019.

      By: /s/ *Christopher L. Johnson*