**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **W&O SUPPLY, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.: 4:19-CV-00153** |
| **v.** | § | |
| | § | **Hon. Kenneth M. Hoyt** |
| **BRANDON PITRE, TOBI JOHNSON,** | § | |
| **WILLIAM TERRY, AND WILLIAM** | § | **JURY TRIAL DEMANDED** |
| **FULLER,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS' RESPONSE AND BRIEF IN OPPOSITION TO**
**PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION,**
<u>**AND MOTION FOR EVIDENTIARY HEARING**</u>

i

# Table of Contents

I.   INTRODUCTION ........................................................................................................ 1

II.  RELEVANT FACTUAL BACKGROUND .......................................................... 2

III. ARGUMENT ........................................................................................................ 6

   A.   Standard for Preliminary Injunctions. ......................................................... 6

   B.   Plaintiff has No Likelihood of Success as the Non-Compete Agreements are

   Unenforceable. ..................................................................................................... 7

      1.   Enforceability of Non-Compete Agreements. ........................................... 7

      2.   Plaintiff Admits the Non-Compete Agreements are Unenforceable ........... 9

      3.   The Non-Compete Agreements are Not Ancillary to or Part of an Enforceable Contract.

         10

      4.   The Non-Compete Agreements Do Not Contain a Time Limitation. ........... 12

      5.   The Non-Compete Agreements May Not Be Reformed. ........................... 15

   C.   Plaintiff Cannot Establish Irreparable Harm. ............................................. 17

IV.  PRAYER ............................................................................................................. 23

### TABLE OF AUTHORITIES

#### CASES

*Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,*
  209 S.W.3d 644 (Tex. 2006)................................................................................ 12, 15

*B.J. Software Sys., Inc. v. Osina,*
  827 S.W.2d 543 (Tex. App.—Houston [1st Dist.] 1992, no writ)........................... 21

*Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.,*
  905 F.2d 63 (5th Cir.1990) ..................................................................................... 10

*Butler v. Arrow Mirror & Glass, Inc.,*
  51 S.W.3d 787 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ............................. 20

*Canal Auth. of the State of Florida v. Callaway,*
  489 F.2d 567 (5th Cir.1974) ................................................................................... 22

*Cardinal Pers., Inc. v. Schneider,*
  544 S.W.2d 845 (Tex. Civ. App.—Houston [14th Dist.] 1976, no writ)................. 17

*Central State Logistics, Inc. v. BOC Trucking, LLC,*
  2018 WL 5662669 (Tex. App.—Houston [1st Dist.] 2018)..................................... 17

*Chacon v. Granata,*
  515 F.2d 922 (5th Cir.1975) ................................................................................... 21

*Clay v. Richardson,*
  290 S.W. 235 (Tex. Civ. App.—Fort Worth 1926, writ dism'd w.o.j.) ................... 21

*Cortes v. City of Houston,*
  No. H–07–2744, 2007 WL 4376106 (S.D. Tex. Dec.13, 2007) ............................. 22

*D'Onofrio v. Vacation Publications, Inc.,*
  888 F.3d 197 (5th Cir. 2018) .................................................................................. 12

*GE Betz Inc. v. Moffitt-Johnson,*
  301 F. Supp. 3d 668 (S.D. Tex. 2014) .................................................................... 20

*Giovinale v. JP Morgan Chase Bank, N.A.,*
  CV H-16-986, 2017 WL 3535440 (S.D. Tex. Aug. 17, 2017) .................................. 8

*Guy Carpenter & Co. v. Provenzale,*
  334 F.3d 459 (5th Cir. 2003) .................................................................................. 11

*Holland Am. Ins. Co. v. Succession of Roy,*
  777 F.2d 992 (5th Cir. 1985) .................................................................................. 10

*Hunn v. Dan Wilson Homes, Inc.,*
  789 F.3d 573 (5th Cir. 2015) ....................................................................... 11, 12, 15

*John R. Ray & Sons, Inc. v. Stroman,*
  923 S.W.2d 80 (Tex. App.—Houston [14th Dist.] 1996, writ denied)............... 19, 20

*Lake Charles Diesel, Inc. v. Gen. Motors Corp.,*
  328 F.3d 192 (5th Cir.2003) ............................................................................. 11, 21

*LasikPlus of Texas, P.C. v. Mattioli,*
  418 S.W.3d 210 (Tex. App.—Houston [14th Dis.] 2013)....................................... 20

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,*
  289 S.W.3d 844 (Tex. 2009).............................................................................. 12, 15

*Marsh USA Inc. v. Cook,*
  354 S.W.3d 764 (Tex. 2011)............................................... 11, 12, 14, 15, 16, 20

*Martin v. Credit Protection Ass'n, Inc.*,
   793 S.W.2d 667 (Tex. 1990) ............................................................................ 16
*Matlock v. Data Processing Secur., Inc.*,
   618 S.W.2d 327 (Tex. 1981) ............................................................................ 18
*M-I, L.L.C. v. Stelly*,
   H-09-CV-01552, 2009 WL 2355498 (S.D. Tex. July 30, 2009) .................. 21, 25
*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
   760 F.2d 618 (5th Cir. 1985) ....................................................................... 10, 11
*Olander v. Compass Bank*,
   172 F. Supp. 2d 846 (S.D. Tex. 2001) ............................................................ 11
*Oliver v. Rogers*,
   976 S.W.2d 792 (Tex. App.— Houston [1st Dist.] 1998, pet. denied) ................ 18
*Ponce v. Socorro Indep. Sch. Dist*,
   508 F.3d 765 (5th Cir.2007) ....................................................................... 11, 21
*Richter v. Bank of America National Trust & Savings Assoc.*,
   939 F.2d 1176 (5th Cir. 1991) ..................................................................... 13, 18
*Rimkus Consulting Grp., Inc. v. Cammarata*,
   255 F.R.D. 417 (S.D. Tex. 2008) .................................................................... 12
*T.O. Stanley Boot Co., Inc. v. Bank of El Paso*,
   847 S.W.2d 218 (Tex. 1993) ........................................................................ 13, 18
*Trout Point Lodge, Ltd. v. Handshoe*,
   729 F.3d 481 (5th Cir. 2013) ........................................................................... 19
*W.R. Grace & Co. v. Henson*,
   2007 WL 2389547(Tex. App.—Corpus Christi Aug.23, 2007, no pet.) ............ 25
*York v. Dotson*,
   271 S.W.2d 347 (Tex. Civ. App.—Fort Worth 1954, writ ref'd n.r.e.) ............ 21

## STATUTES

Tex. Bus. & Com. Code § 15.04 ....................................................................... 16
Tex. Bus. & Com. Code §15.05 .......................................................................... 5
Tex. Bus. & Com. Code § 15.50 ............................................................... 12, 16, 20
Tex. Bus. & Com. Code § 15.51 ............................................................ 5, 12, 19, 20

## RULES

Fed. R. Civ. P. 15 ............................................................................................ 8

iv

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

COMES NOW Defendants Brandon Pitre, Tobi Johnson, William Terry, and William Fuller, (collectively "Defendants"), and file this its Response and Brief in Opposition to Plaintiff's Renewed Motion for Preliminary Injunction and Motion for Evidentiary Hearing ("Motion") and, in support hereof, would show the Court as follows:

## I.    <u>INTRODUCTION</u>

1.    Plaintiff's Renewed Motion for a Preliminary Injunction should be denied as Plaintiff has not and cannot establish a substantial likelihood of success on the merits because the Non-Compete Agreements are unenforceable and statutorily incapable of reformation under the Texas Covenants Not to Compete Act. Specifically, the Non-Compete Agreements attached to Plaintiff's Amended Complaint do not contain a temporal limitation as required by the Texas Covenants Not to Compete Act (the "Act"). Tex. Bus. & Com. Code §15.05(a). The geographic limitation and scope of activity actually contained on the face of the Non-Compete Agreements are also overbroad and unenforceable as written, amounting to unlawful industry wide and global restraints on trade. Although Plaintiff has plead for reformation of the Non-Compete Agreements, the reformation statute does not permit this Court to reform an employee non-compete agreement to insert a temporal limitation where one does not exist. Tex. Bus. & Com. Code §15.51(c).

2.    Plaintiff has admitted in writing that the Non-Compete Agreements are unenforceable, has declined to pursue other employees despite those employees engaging in the same behavior of which Plaintiff now accuses Defendants, and has replaced the Non-Compete Agreements at issue in this case with a new form.

3.    Plaintiff is not entitled to an injunction relating to its confidential information because Plaintiff has not alleged that Defendants misappropriated confidential information or trade secrets of Plaintiff.  Further, Plaintiff has alleged broad categories of confidential information

1

allegedly provided to Defendants. However, as demonstrated by the deposition of Fred Loomis[1], Plaintiff has overstated the confidential information allegedly provided.

4.      For these reasons and those explained below, Plaintiff must be denied a preliminary injunction.

## II.      RELEVANT FACTUAL BACKGROUND

5.      Defendant William Fuller executed a "Staff Employment Agreement" with Plaintiff on January 5, 1995 which contained restrictive covenants in exchange for Defendant Fuller receiving W&O confidential information. [Ex. A: Fuller 1995 Agreement].   Likewise, Defendant Tobi Johnson executed the same form  "Staff Employment Agreement" on July 28, 1997. [Ex. B: Johnson 1997 Agreement].

6.      Plaintiff subsequently had Defendants Fuller and Johnson execute new agreements, along with Defendants Pitre and Terry. Plaintiff alleges that in connection with their employment Defendants each signed a non-compete agreement (the "Non-Compete Agreements"). [Doc. 27 at ¶¶ 10-14]. While each Defendant signed their own individual non-compete agreement at different times, all of the Non-Compete Agreements contain the same terms. [*Id.* at ¶¶ 10-14].  The same Non-Compete Agreement form has been in use by Plaintiff for nearly twenty years. [Doc. 27, Pl.'s Am. Compl. at Exhibits B, C] The Non-Compete Agreements state:

- Employee agrees that, during the term of this employment and in the event of termination (voluntary or involuntary) he/she will not attempt to divert any existing or possible future business of Employer, or assist in any such competition within one hundred (100) miles of any W & O Supply branch operation existing at the time of termination of employment.

- Employee agrees that he/she will not at any time directly or indirectly, either during or after termination of employment, make use of or disclose to any person, group or organization, any information and/or details including, but

---

[1] Fred Loomis verified the facts contained in Plaintiff's state court lawsuit and Original Complaint in this case. Although Mr. Loomis did not provide a verification for Plaintiff's First Amended Complaint, the facts remain the same as Plaintiff's previous pleadings.

not limited to the names or addresses of any employees or customers of Employer, the details or provisions of any written or oral contract or understanding between employer and nay materials, manuals, forms, techniques, methods, or procedures of Employer used by or made available to Employee in the course of his/her employment.

- Employee further agrees that, immediately upon termination of employment, and prior to final compensation, and/or upon request by Employer at any time, he/she will return to Employer any and all materials including but not limited to employee lists, papers, documents or data (including any and all copies thereof) belonging to or relating to the business of Employer.

[*Id.* at ¶ 14, Ex. A-D].

7.     Prior to Defendants separating from Plaintiff, Plaintiff acknowledged that the non-compete forms signed by Defendants were unenforceable. [Ex. C: Pitre Email re unenforceable non-compete]. Specifically, on October 23, 2017, Plaintiff's Director of Human Resources stated in an email to Defendant Pitre, "**counsel advised that our non-compete would not hold up in court so we pulled it from our new hire paperwork... with the intention of replacing it with something else.**" [*Id.*].

8.     Subsequently, an employee in Plaintiff's Houston office left to work for a competitor of Plaintiff, however Plaintiff declined to take legal action against that employee. In fact, it appears that Plaintiff has never taken action against other employees for breach of the Non-Compete Form. [Ex. D: Loomis Depo. at 88:9-89:17].  Also, Plaintiff has now replaced the non-compete form with a new agreement. [Ex. D: Loomis Depo. at 87:16-88:8].

9.     Plaintiff alleges that in exchange for signing the Non-Compete Agreements, Defendants were granted access to Plaintiff's confidential information. (*Id.* at ¶ 14). In its Motion, Plaintiff alleges that it provided Defendants confidential information as consideration for the agreements to the Non-Compete Agreements such as:

- customer and OEM relationships, pricing, and negotiations

- access to company wide plans, including original equipment manufacturer (OEM) relationships and pricing levels.

- details or provisions of any written or oral contract or understanding between W&O and customers, and any materials, manuals, forms, techniques, methods, or procedures of W&O.

- access to W&O's Salesforce customer relationship system, which lists all of W&O's customer contacts and point person within the customer, as well as specific notes from customer visits and discussion points.

- access to and knowledge of W&O's cost of materials, and thus, W&O's product margins.[2]

10.    Frank Loomis is the Vice President of Sales for Plaintiff.  Mr. Loomis testified about the above information in his deposition and either established that the information is not confidential or that he does not know whether Defendants were provided with the information. For example, Mr. Loomis testified that he had no independent recollection that Defendant Pitre was ever told that he was on the corporate senior management team. [Ex. D: Loomis Depo. at 31:10-16]. When asked about access to "company wide plans" Mr. Loomis testified that there was no written plan but oral discussions of what was being done with the metric valve product line and space brand valves, however these products are limited to W&O and Defendants do not have access to them. [Ex. D: Loomis Depo. at 35:1-23, 39:13-41:25].

---

[2] [Doc. 35 at pg. 3]. Although Plaintiff's Motion repeatedly cites to the allegations in its Original Complaint, those allegations are moot because Plaintiff amended its Complaint once as a matter of course. Fed. R. Civ. P. 15(a)(1)(B); *Giovinale v. JP Morgan Chase Bank, N.A.*, CV H-16-986, 2017 WL 3535440, at *3 (S.D. Tex. Aug. 17, 2017) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").

11.     When discussing pricing Mr. Loomis testified that Defendants did not take any physical pricing lists and there are thousands of products in the W&O catalog, of which the prices are not static and are set by the manufacturers. [Ex. D: Loomis Depo. at 44:1-7, 47:7-48:6]. Regarding Defendants alleged knowledge of pricing, Mr. Loomis admitted:

> Q. And it's fair -- excuse me. It's fair to say
> that over time, the pricing from the manufacturer may
> change?
>
> A. Yes.
>
> Q. It's also fair to say that if a -- if an
> employee is no longer at W&O and the prices change, they
> don't know what the pricing is any more?
>
> A. Correct.

[Ex. D: Loomis Depo. at 47:18-25; 48: 1-6]. Additionally, W&O has protected their OEM relationships with the metric valve manufacturer and other vendors, meaning Defendants do not have access nor the ability to sell those products. [Ex. D: Loomis Depo. at 49:11-19].

12.     Mr. Loomis further testified regarding the contracts or understanding between W&O and customers and any materials, manuals, forms, techniques, methods, or procedures of W&O. Mr. Loomis admitted he was not aware of any oral contracts with customers, and did not know of any W&O manuals, materials, or procedures, etc., that Defendants allegedly received or what was confidential about them. [Ex. D: Loomis Depo. at 62:1-63:6].  Additionally, Defendants Fuller and Johnson did not have access to the Sales Force software to access customer lists or notes. [Ex. D: Loomis Depo. at 65:4-20].

13.     Plaintiff alleges that Defendants are now in breach of the Non-Compete Agreements they signed while employed by Plaintiff and seeks reformation of the Non-Compete

Agreements in the event that the Court determines the Non-Compete Agreements are unenforceable as written. (Doc. 27 at ¶¶ 14, 20-23, 24-26).

14. Plaintiff does not allege that the Non-Compete Agreements contain a temporal limitation as required by Section 15.50(a) of the Act. Plaintiff does not allege that Defendants are in possession of or are using Plaintiff's confidential information, nor has it asserted a cause of action related to its confidential information.

### III.   <u>ARGUMENT</u>

15. Plaintiff has no right to the extraordinary and drastic remedy of a preliminary injunction because it cannot meet its burden to show substantial likelihood that it will prevail on the merits, a substantial threat that it will suffer irreparable injury, or that its threatened injury outweighs the threatened harm to Defendants.  The Non-Compete Agreements are not "ancillary to or part of otherwise enforceable agreements." Furthermore, even if the Non-Compete Agreements were "ancillary to or part of otherwise enforceable agreements," which they are not, the Non-Compete Agreements are unenforceable as written and barred from being judicially reformed.

**A.  Standard for Preliminary Injunctions.**

16. A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.,* 905 F.2d 63, 65 (5th Cir.1990) (quoting *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir. 1985)). Thus, "the decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir. 1985).

17. A preliminary injunction requires Plaintiff to show (1) a substantial likelihood that it will prevail on the merits, (2) a substantial threat that it will suffer irreparable injury if the

injunction is not granted, (3) its threatened injury outweighs the threatened harm to the parties whom it seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest. *See Ponce v. Socorro Indep. Sch. Dist,* 508 F.3d 765, 768 (5th Cir.2007); *Lake Charles Diesel, Inc. v. Gen. Motors Corp.,* 328 F.3d 192, 195-96 (5th Cir.2003). The Fifth Circuit Court of Appeals has cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements. *Lake Charles Diesel,* 328 F.3d at 196; *Miss. Power,* 760 F.2d at 621.

18.     If Plaintiff fails to sufficiently establish any one of these four factors, the Court must deny the preliminary injunction. *See Lake Charles Diesel,* 328 F.3d at 196 (requiring the plaintiff to carry the burden of persuasion "on all four requirements"); *see also Ponce,* 508 F.3d at 768 (vacating the district court's preliminary injunction, stating, "[o]ur analysis begins-and ends-with the first requirement").

## B. Plaintiff has No Likelihood of Success as the Non-Compete Agreements are Unenforceable.

### 1. Enforceability of Non-Compete Agreements.

19.     The enforceability of a covenant not to compete is regulated by Texas statute and presents a question of law for the court. *Olander v. Compass Bank*, 172 F. Supp. 2d 846, 851 (S.D. Tex. 2001), aff'd, 44 Fed. Appx. 651 (5th Cir. 2002) (citations omitted). "The enforceability of non-compete clauses is governed by the Texas Covenants Not to Compete Act." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 584 (5th Cir. 2015) (citing *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011) ("Covenants that place limits on former employees' professional mobility or restrict their solicitation of the former employers' customers and employees are restraints on trade and are governed by the Act.")); *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464–65 (5th Cir. 2003) (applying Texas law and stating that non-solicitation covenants restrain trade and

competition and are governed by the Act); *Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417, 438–39 (S.D. Tex. 2008) (holding that a "nonsolicitation covenant is also a restraint on trade and competition and must meet the criteria of section 15.50 of the Texas Business and Commerce Code to be enforceable" (citations omitted)).

20.     In the case of personal service occupations, such as salespersons, the employer has the burden of establishing that covenants not to compete meet the requirements of Tex. Bus. & Com. Code § 15.50. Tex. Bus. & Com. Code § 15.51(b); *see also D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 211 (5th Cir. 2018).

21.     Additionally, as a contract the Non-Compete Agreements are subject to the basic tenants of contract law. As such, the Non-Compete Agreements must be supported by consideration. "The requirement of an 'otherwise enforceable agreement' is satisfied when the covenant is ancillary to or part of an agreement which contains mutual, nonillusory promises." *Hunn v. Dan Wilson Homes, Inc.,* 789 F.3d 573, 584 (5th Cir. 2015) (quoting *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 773 (Tex. 2011)). "The covenant cannot be a stand-alone promise from the employee lacking any new consideration from the employer." *Id.* (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 651 (Tex. 2006)). "A contract for at-will employment, standing alone, does not satisfy the requirement of an 'otherwise enforceable agreement' because the promise of continued employment in an at-will contract is illusory— neither the employer or employee is bound in any way." *Id.* (quoting *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009)).

22.     Additionally, a fundamental principle of contract law is that the contract is only enforceable if it reflects the parties' agreement on all material terms. If the contract fails to address a material term, the contract is not enforceable as a matter of law because a court cannot determine

the obligations of the parties. *See, e.g.*, *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, (Tex. 1993) ("In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook."); *Richter v. Bank of America National Trust & Savings Assoc.*, 939 F.2d 1176, 1196 (5th Cir. 1991) ("If an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract").

### 2. *Plaintiff Admits the Non-Compete Agreements are Unenforceable*

23.     In October 2017, Plaintiff admitted to Defendant Pitre that the Non-Compete Agreements are not enforceable. Specifically, Plaintiff's Human Resource Director stated in an email to Mr. Pitre that the non-competes were unenforceable, had been pulled from new hire paperwork and was being replaced. [Ex. C: Pitre Email re unenforceable non-compete]. Mr. Loomis testified that the form of the Non-Compete Agreements at issue in this case is no longer used because a new non-compete form has been rolled out by Plaintiff for new employees to sign. [Ex. D: Loomis Depo. at 87:16-88:8].  Notably, Plaintiff seeks specific performance of the Non-Compete Agreements, and requests a temporary and permanent injunction restraining Defendants from competition for twenty-four (24) months, Plaintiff only sought a term of twelve (12) months at the state court level. [Doc. 13-1 at 14].

24.     Further establishing the unenforceability of the Non-Compete Agreements is the fact that in approximately twenty years Plaintiff has never filed suit to enforce their non-compete agreements, despite former employees leaving and working for competitors.  Mr. Loomis testified that when a former employee quit W&O and began working for a competing company, W&O sent her and her new company a letter but did not take any action to prosecute her for breach of her non-compete agreement. [Ex. D: Loomis Depo. at 88:9-89:3].  Moreover, Mr. Loomis testified

that in his 20 years with W&O he is not aware of W&O ever instituting legal action against an employee for breach of the non-compete, prior to this suit. [Ex. D: Loomis Depo. at 89:4-17].

25.     Plaintiff has acknowledged that the form of the Non-Compete Agreements is unenforceable, has allowed other former employees to breach the agreement without consequence, and has replaced the form of the Non-Compete Agreements with a new agreement. For these reasons, it is now disingenuous for Plaintiff to claim the Non-Compete Agreements are enforceable. Without enforceable agreements, Plaintiff cannot show a substantial likelihood that it will prevail on the merits and therefore the preliminary injunction must be denied.

### 3.  *The Non-Compete Agreements are Not Ancillary to or Part of an Enforceable Contract.*

26.     Plaintiff contends that the Non-Compete Agreements are ancillary to or part of an otherwise enforceable agreement, however, the entire purpose of the agreement containing the restrictive covenants is to restrain trade. Fred Loomis admitted in his deposition that at-will employment was the only thing promised by W&O in the Non-Compete Contracts. [Ex. D: Loomis Depo. at 81:24-82:6].

27.     The Texas Supreme Court has held that where the object of both parties in making such a contract "is merely to restrain competition, and enhance or maintain prices," there is no primary and lawful purpose of the relationship "to justify or excuse the restraint." *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 770–71 (Tex. 2011) (citations omitted). "This is the basis for the requirement that the covenant be ancillary to a valid contract or transaction having a primary purpose that is unrelated to restraining competition between the parties." *Id*. Here, the Non-Compete Agreements are not ancillary to a valid contract or transaction having a primary purpose

that is unrelated to restraining competition, as everything in the Non-Compete Agreements is to facilitate the restrictive covenants.[3]

28.     Additionally, the Non-Compete Agreements signed by Defendants Tobi Johnson, and William Fuller are unsupported by valid consideration. As a contract the Non-Compete Agreements must be supported by consideration to be valid. "The requirement of an 'otherwise enforceable agreement' is satisfied when the covenant is ancillary to or part of an agreement which contains mutual, nonillusory promises." *Hunn v. Dan Wilson Homes, Inc.,* 789 F.3d 573, 584 (5th Cir. 2015) (quoting *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 773 (Tex. 2011)). "The covenant cannot be a stand-alone promise from the employee lacking any new consideration from the employer." *Id.* (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 651 (Tex. 2006)). "A contract for at-will employment, standing alone, does not satisfy the requirement of an 'otherwise enforceable agreement' because the promise of continued employment in an at-will contract is illusory—neither the employer or employee is bound in any way." *Id.* (quoting *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009)).  Here, Defendant William Fuller executed a "Staff Employment Agreement" with Plaintiff on January 5, 1995 which contained restrictive covenants in exchange for Defendant Fuller receiving W&O confidential information. [Ex. A: Fuller 1995 Agreement].  Likewise, Defendant Tobi Johnson executed the same form  "Staff Employment Agreement" on July 28, 1997. [Ex. B: Johnson 1997 Agreement]. Because Defendants Fuller and Johnson both already received confidential information and employment with W&O, there is no valid consideration to support the validity of their Non-Compete Agreements.

---

[3] *See* Doc. 27, Ex. A-D.

29.     The Non-Compete Agreements are unenforceable as not being a part of or ancillary to an otherwise enforceable agreement.

### 4. The Non-Compete Agreements Do Not Contain a Time Limitation.

30.     Plaintiff is incapable of establishing any likelihood of success on the merits because the Non-Compete Agreements are unenforceable.  Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful.  *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 770 (Tex. 2011). (internal citations omitted). The Legislature created a limited exception to this rule for valid covenants not to compete. *Id*. at 771; Tex. Bus. & Com. Code § 15.04.  Unless an agreement not to compete is reasonable, it is a restraint of trade. *Martin v. Credit Protection Ass'n, Inc.*, 793 S.W.2d 667, 668–69 (Tex. 1990). As stated above, the "Criteria for Enforceability of Covenants Not to Compete" requires a restrictive covenant to contain reasonable limitations in time, geographical area, and scope of activity to be restrained that impose restrictions only necessary to protect goodwill and business interest of the employer. Tex. Bus. & Com. Code §15.50 (emphasis added).

31.     Plaintiff has not plead the existence of enforceable Non-Compete Agreements in its Amended Complaint or alleged so in its Motion. Plaintiff fails to make any allegation that the Non-Compete Agreements contain a reasonable time limitation. In fact, at the hearing on Plaintiff's temporary restraining order in the 133rd District Court of Harris County the court asked Plaintiff's counsel "What is the time limit in the noncompete though?" to which counsel responded "Your Honor, I'm struggling to see what it is…" [Doc. 13-1 at 63:22-25]. Rather than address a time limitation, Plaintiff's First Amended Complaint and Motion attempt to gloss over this requirement, generally stating in conclusory fashion that "paragraphs 2-4 (regarding the restrictive covenants) of the Non-Compete Agreement are valid and enforceable . . . " and "the limitations as

sought by W&O set out in these covenants concerning geographic area and scope of activity restrained are reasonable and do not impose a greater restraint than is necessary . . . ." (Doc. 27 at ¶¶ 30-31).

32.     Under Texas law, lack of a time limitation, or a time limitation that is potentially indefinite, makes a non-compete agreement unenforceable. *Central State Logistics, Inc. v. BOC Trucking, LLC*, 2018 WL 5662669 *5, (Tex. App.—Houston [1st Dist.] 2018) (citing *Cardinal Pers., Inc. v. Schneider*, 544 S.W.2d 845, 847 (Tex. Civ. App.—Houston [14th Dist.] 1976, no writ)). Unlike the Non-Compete Agreements here, in *Central State Logistics, Inc.*, the covenant at issue had a temporal limitation that barred competition "[f]or a period of twenty four (24) months following the Carrier's last contact with any client or client[s] of Broker. . . ." *Id.* at *4. There the court found the restrictive covenant unenforceable, stating:

> …the covenant lasts for two years after BOC Trucking's last contact with any client of Diligent, regardless of whether BOC Trucking had had any previous interactions with them and regardless of whether the interaction was during or after the agreement. This creates the potential for a covenant not to compete that does not end.

*Id.*

33.     Similarly, in *Cardinal Pers.*, the covenant not to compete contained a provision that extended the time period from six months after the employee's termination, instead making the agreement last until six months after the employee stopped being in violation of the agreement, "whether voluntarily or by injunction." *Cardinal Pers., Inc.*, 544 S.W.2d at 847. The court held this rendered the time period indeterminable because the time period could be ascertained "only by hindsight; i.e., the duration of the covenant cannot be determined until the jurisdiction of the trial court is invoked and its equity powers exercised." *Id.*

13

34.     Here, the Non-Compete Agreements are missing any semblance of a temporal limitation, which is a material term to its enforceability.[4] Like the non-compete restrictive covenants discussed above, the Non-Compete Agreements Plaintiff seeks to enforce are unreasonable and indefinite restraints on trade. **Moreover, there is nothing in the First Amended Complaint, Non-Compete Agreements or Motion that could aid in determining the time period to which the parties are obligated**. *See, T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, (Tex. 1993) ("In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook."); *Richter v. Bank of America National Trust & Savings Assoc.*, 939 F.2d 1176, 1196 (5th Cir. 1991) ("If an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract").  A covenant not to compete is not enforceable when its terms are too vague. *See Matlock v. Data Processing Secur., Inc.*, 618 S.W.2d 327, 329 (Tex. 1981) (holding that noncompetition portions of an injunction order that were too vague were unenforceable). Therefore, the vagueness of any time limitation in the Non-Compete Agreements in this case renders them unenforceable and Plaintiff's request for injunctive relief under their terms should be denied.

35.     Furthermore, and as will be discussed in further detail below, the Court is not statutorily authorized to reform the Non-Compete Agreements because remedying the time limitation issue would require the insertion of a term not bargained for by the parties rather than the reformation of an unreasonable existing term. Therefore, because the Non-Compete

---

[4] While non-compete agreements related to the sale of a business need not contain a fixed time limitation, the Non-Compete Agreements at issue in this case are related to employment and not to the sale of a business. *See Oliver v. Rogers*, 976 S.W.2d 792, 800 (Tex. App.— Houston [1st Dist.] 1998, pet. denied).

Agreements are unenforceable, they cannot serve as the basis for a breach of contract claim and Plaintiff's cause of action should be dismissed.

### 5. *The Non-Compete Agreements May Not Be Reformed.*

36.     The Non-Compete Agreements are unreasonable restraints on trade and are therefore unenforceable.  Plaintiff cannot establish that it is entitled to reformation of the Non-Compete Agreements because the Act does not permit this Court to create a new temporal limitation that does not already exist in the restrictive covenants.  *See* Tex. Bus. & Com. Code §15.51(c).

37.     Section 15.51(c) of the Texas Business and Commercial Code provides that a court shall reform covenants not to compete which contain limitations as to time, scope, and area that are unreasonable and impose a greater restraint than necessary. Tex. Bus. & Com. Code §15.51(c). However, as stated above, the Texas legislature intended that a non-compete agreement only be reformed to narrow overbroad limitations which are already a part of the covenant. By specifically adding the language "contains limitations" and "limitations contained in the covenant" the Texas legislature makes it clear that Section 15.51 requires that non-compete agreements contain limitations as to time, geographical area, and scope of activity in order for an overbroad non-compete agreement to be eligible for reformation. *See* Tex. Bus. & Com. Code § 15.51(c). It is the Plaintiff's burden to establish that reformation is appropriate and, if so, what would be a reasonable limitation. *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

38.     "The task of statutory interpretation begins and, if possible, ends with the language of the statute." *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013). When interpreting a statute, courts should enforce the law as written. *LasikPlus of Texas, P.C. v. Mattioli*,

418 S.W.3d 210, 220 (Tex. App.—Houston [14th Dis.] 2013) (holding that the court could not add a buy-out provision to a physician non-compete agreement under Tex. Bus. & Com. Code § 15.50(b)). In applying the reformation statute, Texas courts usually have reformed unenforceable restrictive covenants by revising the unenforceable provisions to those that would be reasonable under the circumstances. *See Butler v. Arrow Mirror & Glass, Inc.,* 51 S.W.3d 787, 794 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *GE Betz Inc. v. Moffitt-Johnson*, 301 F. Supp. 3d 668, 687 (S.D. Tex. 2014), aff'd in part sub nom. *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318 (5th Cir. 2018). However, this reformation extends only to existing terms, and there is no authority for adding non-existent terms to reform an agreement.  Indeed, as Plaintiff's Motion states "should this Court find **any one or more provisions of the Non-Compete Agreements** to be overbroad W&O respectfully seeks reformation of such provision. . .," yet there is no time limitation provision in the Non-Compete Agreements to reform. While the Act does provide that non-compete agreements may be reformed if the required terms of the agreement are deemed unreasonable, the statute clearly states that the non-compete agreement must "contain limitations" in order for those limitations to be reformed by the court. Tex. Bus. & Com. Code §15.51(c).

39.    It is not the courts duty to create limitations where none previously existed. *LasikPlus of Texas, P.C.* 418 S.W.3d at 220. While Plaintiff argues that courts have inserted temporal limitations, and that lack of time limitations cannot render a covenant unreasonable, that is not true in the sense of employee non-competes. A noncompete signed by an owner selling a business is quite different than one signed by an employee. *Marsh USA Inc.,* 354 S.W.3d at 790 n. 5 (noting that section 15.50 does not address the "distinction between what type of agreement is enforceable to protect goodwill in the context of the sale of a business and the context of a post-

16

employment restriction"). Courts have been more inclined to enforce a long or limitless time period barring competition after a sale of a business. *See, e.g., York v. Dotson,* 271 S.W.2d 347, 348 (Tex. Civ. App.—Fort Worth 1954, writ ref'd n.r.e.) ("One may lawfully agree not to compete in a particular business, in a reasonably limited territory, during the remainder of his life. Such contracts are held not to be in restraint of trade."); *Clay v. Richardson,* 290 S.W. 235, 236 (Tex. Civ. App.—Fort Worth 1926, writ dism'd w.o.j.) (upholding covenant of theater seller never to open a theater again in town where theater was located). In fact, the one case Plaintiff relies on where a time limitation was missing was decided prior to the revision of Tex. Bus. & Com. Code § 15.51. *B.J. Software Sys., Inc. v. Osina* 827 S.W.2d 543, 546 (Tex. App.—Houston [1st Dist.] 1992, no writ).

40.     The Non-Compete Agreements at issue in this matter are lacking a time limitation entirely. If there is no time limitation in a non-compete agreement, then there is nothing for the Court to reform, and the non-compete agreement is simply unenforceable.

## C. Plaintiff Cannot Establish Irreparable Harm.

41.     Although Plaintiff's Motion should be denied based on its failure to satisfy the first requirement, a substantial likelihood that it will prevail on the merits, this Court should also deny Plaintiff's Motion because there is no substantial threat that it will suffer irreparable injury if the injunction is not granted, or that its threatened injury outweighs the threatened harm to Defendants. *See Ponce,* 508 F.3d 765 at 768; *Lake Charles Diesel, Inc.,* 328 F.3d 192 at 195-96. "Irreparable harm requires a showing that: (1) the harm to plaintiffs is imminent; (2) the injury would be irreparable; and (3) that plaintiffs have no other adequate legal remedy. "*M-I, L.L.C. v. Stelly*, H-09-CV-01552, 2009 WL 2355498, at *6 (S.D. Tex. July 30, 2009) (citing *Chacon v. Granata,* 515 F.2d 922, 925 (5th Cir.1975)). "[O]nly those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary

injunction." *Id.* (quoting *Cortes v. City of Houston,* No. H–07–2744, 2007 WL 4376106, at *2 (S.D. Tex. Dec.13, 2007) (quoting *Canal Auth. of the State of Florida v. Callaway,* 489 F.2d 567, 573 (5th Cir.1974))).

42.    Here, Plaintiff has acknowledged that Defendants did not take any physical documents or confidential information when they left W&O and any other "confidential information" Defendants may have had access to is subject to and has changed since Defendants left their employment with Plaintiff. In its Motion, Plaintiff alleges that it provided Defendants confidential information as consideration for the agreements to the Non-Compete Agreements such as:

- customer and OEM relationships, pricing, and negotiations

- access to company wide plans, including original equipment manufacturer (OEM) relationships and pricing levels.

- details or provisions of any written or oral contract or understanding between W&O and customers, and any materials, manuals, forms, techniques, methods, or procedures of W&O.

- access to W&O's Salesforce customer relationship system, which lists all of W&O's customer contacts and point person within the customer, as well as specific notes from customer visits and discussion points.

- access to and knowledge of W&O's cost of materials, and thus, W&O's product margins[5]

---

[5] [Doc. 35 at pg. 3]. Despite filing its First Amended Complain, Plaintiff's Motion repeatedly cites to the allegations in its Original Complaint.

43.     Plaintiff further argues that Defendants gave Independence a competitive edge because of their exposure to business information that is not publicly available, gaining intimate knowledge of W&O's pricing and cost margins and their customer's purchasing history, their experience and contacts made on behalf of W&O.

44.     However, the confidentiality of this information and whether it was provided to Defendants is unsupported by the evidence. Mr. Loomis testified about the above information in his deposition and either established that the information is not confidential or that he does not know whether Defendants were provided with the information. For example, Mr. Loomis testified that he had no independent recollection that Defendant Pitre was ever told that he was on the corporate senior management team. [Ex. D: Loomis Depo. at 31:10-16]. When asked about access to "company wide plans" Mr. Loomis testified that there was no written plan but oral discussions of what was being done with the metric valve product line and space brand valves, however these products are limited to W&O and Defendants do not have access to them as W&O has protected them through the supplier. [Ex. D: Loomis Depo. at 35:1-23, 39:13-41:25].  When discussing pricing Mr. Loomis testified that Defendants did not take any physical pricing lists and there are thousands of products in the W&O catalog, of which the prices are not static and are set by the manufacturers. . [Ex. D: Loomis Depo. at 44:1-7, 47:7-48:6].  Additionally, W&O has protected their OEM relationships with the metric valve manufacturer and other vendors. [Ex. D: Loomis Depo. at 49:11-19].

45.     Mr. Loomis further testified regarding written and oral contracts or understanding between W&O and customers. Despite alleging that Defendants were provided details of oral contracts with customers, Mr. Loomis admitted that no oral contracts with customers actually exist. [Ex. D: Loomis Depo. at 60:10-12]. With regard to written contracts, Mr. Loomis identified a

preferred pricing contract but admitted he had not seen a copy of it and did not know its terms. He

also admitted that W&O had not actually lost the contract [Ex. D: Loomis Depo. at 95:10-16].

With regard to other written contracts, Mr. Loomis did not know whether Defendants are actually

selling to those customers. [Ex. D: Loomis Depo. at 62:1-63:6].

46.    Despite alleging that Defendants were exposed to confidential materials, manuals,

forms, techniques, methods, or procedures of W&O, Mr. Loomis admits that Defendants took no

physical information with them, and he did not know what manuals, materials, or procedures etc.,

the Defendants were alleged to have received and did not know was confidential about them. [Ex.

D: Loomis Depo. at 62:1-63:6].  Additionally, Defendants Fuller and Johnson did not have access

to the Sales Force software to access customer lists or notes. [Ex. D: Loomis Depo. at 65:4-20].

Because Mr. Loomis is purportedly the source of information in the Amended Complaint, although

the Amended Complaint is not verified as the Original was by Mr. Loomis, and Mr. Loomis is

unable to identify specific confidential information that was provided to Defendants, there is no

evidence that Plaintiff will suffer irreparable harm.

47.    Indeed, Defendants served Mr. Loomis with a Subpoena Duces Tecum requesting

"[c]opies of any documents evidencing that Defendants took or retained confidential information

following their employment with W&O.  Plaintiff's response stated:

> Plaintiff objects to "following their employment" as vague and calls for
> speculation and overbroad. Plaintiff further objects that responsive documents
> are solely in Defendants' possession, custody, and control. Plaintiff also objects
> that this request is premature, as this lawsuit has only just been filed, and
> discovery is ongoing at this time.
>
> Subject to and without waiving the foregoing, none at this time.[6]

---

[6] Ex. E: Pl.'s Obj. and Responses to Defs.' Subpoena Duces Tecum.

48.     Additionally, at the hearing on Plaintiff's temporary restraining order in the 133rd District Court of Harris County, Plaintiff's counsel stated "[a]nd he said if -- you know, we admitted that there is no evidence that these defendants have misappropriated confidential information and somehow as a result we're not entitled to a TRO. That's simply not correct. It's true we have not pleaded a misappropriation count. [Doc. 13-1 at 58:23-59:2].

49.     Texas Appeals Courts have held that "when there is no proof of misuse of confidential information, irreparable harm is not presumed. *W.R. Grace & Co. v. Henson,* No. 13–06–668–CV, 2007 WL 2389547, at *3 n. 3 (Tex. App.—Corpus Christi Aug.23, 2007, no pet.). "In *W.R. Grace,* the defendant, a former sales representative for Grace, left to work for a competitor." *M-I, L.L.C.,* 2009 WL 2355498, at *6 (citing *W.R. Grace & Co. v. Henson,* 2007 WL 2389547. "Grace's company representative testified that he did not know if the defendant had misused any information and could not identify a specific customer that Grace had lost or was in danger of losing to defendant." *Id.* "The defendant continued to contact the same customers he had served while at Grace, but he testified that he did not use the confidential information from Grace in making sales calls." *Id.* Here, Plaintiff is similarly unable to prove that Defendants misappropriated confidential information.

50.     Even if Defendants had misappropriated confidential information and Plaintiff had plead a misappropriation count, which they have not, any damage that could be caused by Defendants is quantifiable and Plaintiff has an adequate judicial remedy. "[O]nly those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction." *M-I, L.L.C. v. Stelly*, 2009 WL 2355498, at *6 (quoting *Cortes,* 2007 WL 4376106, at *2 (quoting *Callaway,* 489 F.2d 567 at 573))).  Here, Plaintiff is unable to identify any specific contract that Plaintiff has lost to Defendants since they left their

employment with W&O. In fact, Mr. Loomis admitted that no oral contracts with customers actually exist. [Ex. D: Loomis Depo. at 60:10-12]. With regard to written contracts, Mr. Loomis identified a preferred pricing contract but admitted he had not seen a copy of, did not know its terms, and admitted that W&O had not actually lost the contract. [Ex. D: Loomis Depo. at 95:10-16]. With regard to other written contracts, Mr. Loomis did not know whether Defendants are actually selling to those customers. [Ex. D: Loomis Depo. at 62:1-63:6]. Regardless, if Plaintiff were able to identify specific contracts that were lost to Defendants due to their misappropriation of confidential information, any damages caused by such a loss are easily quantifiable. Therefore, Plaintiff could be compensated with monetary damages, providing Plaintiff with an adequate judicial remedy. Therefore, Plaintiff has no basis for a preliminary injunction and the Motion should be denied.

## IV.   PRAYER

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion and deny the entry of a preliminary injunction, and for any further relief this Court deems just and proper.

Dated: March 11, 2019.
                                        **Johnson & Associates**
                                        **Attorneys at Law, PLLC**

                                        By:  */s/ Christopher L. Johnson*
                                        Christopher L. Johnson
                                        Attorney-in-Charge
                                        Texas State Bar No. 24069999
                                        Federal ID No. 1050247
                                        chris@Johnson-Attorneys.com
                                        Justin M. Kornegay
                                        Texas State Bar No. 24077668
                                        Federal ID No. 1717328
                                        justin@Johnson-Attorneys.com
                                        Morgan A. Jenkins
                                        Texas State Bar No. 24106141
                                        Federal ID No. 3364193
                                        morgan@johnson-attorneys.com
                                        303 East Main Street, Suite 100
                                        League City, Texas 77573
                                        Main:281-895-2410
                                        Fax: 409-263-1020
                                        **COUNSEL FOR DEFENDANTS**

<u>**CERTIFICATE OF SERVICE**</u>

I, herby certify that a true and correct copy of the foregoing has been served on all counsel of record whom have appeared in this case via the Southern District of Texas Electronic Case Filing System on March 11, 2019.

By: <u>*/s/ Justin M. Kornegay*   </u>
Justin M. Kornegay