IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| W&O SUPPLY, INC. | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CASE NO. 4:19-cv-00153 |
| | § | |
| BRANDON PITRE, ET AL. | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
James M. Cleary, Jr.
State Bar No. 00783838
*cleary@mdjwlaw.com*
808 Travis, 20th Floor
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

**ATTORNEY-IN-CHARGE  FOR  PLAINTIFF,
W&O SUPPLY, INC.**

**OF COUNSEL**

W. Jackson Wisdom
State Bar No. 21804025
*wisdom@mdjwlaw.com*
Sylvia Ngo
State Bar No. 24067100
*ngo@mdjwlaw.com*
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
808 Travis, 20th Floor
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

# <u>TABLE OF CONTENTS</u>

Table of Contents ...........................................................................................................i

Table of Authorities ......................................................................................................ii

I.      Introduction ...................................................................................................... 1

II.     Nature and Stage of Proceeding......................................................................... 2

III.    Statement of Issues ........................................................................................... 2

IV.     Relevant Facts ................................................................................................... 3

V.      Argument and Authorities................................................................................. 4

        A.      When a Non-Compete is Enforceable under the Texas Non-Compete Act............ 4

        B.      The Non-Compete Agreements were "Otherwise Enforceable
                Agreements" .......................................................................................... 5

        C.      Because the Non-Compete Agreements were "Otherwise Enforceable
                Agreements," if any Limitation Therein is Overbroad, this Court is
                Required to Reform It ............................................................................ 9

        D.      Upon this Court's Reformation, there is a Valid Contract that may Support
                a Tortious Interference Claim ............................................................. 15

VI.     Motion for Leave to Amend ............................................................................ 17

VII.    Prayer ............................................................................................................. 17

## TABLE OF AUTHORITIES

### Cases

*Accruent, LLC v. Short*,
   1:17-CV-858-RP, 2018 WL 297614 (W.D. Tex. Jan. 4, 2018) ................................................ 15

*Alex Sheshunoff Mgmt. Services, L.P. v. Johnson*,
   209 S.W.3d 644 (Tex. 2006) ................................................................................ 7, 8, 9

*Am. Nat. Ins. Co. v. Cannon*,
   86 S.W.3d 801 (Tex. App.—Beaumont 2002, no pet.) ............................................ 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 2

*B.J. Software Sys., Inc. v. Osina*,
   827 S.W.2d 543 (Tex. App.—Houston [1st Dist.] 1992, no writ) ........................... 12

*Barclay v. Richey*,
   09-17-00026-CV, 2019 WL 302661 (Tex. App.—Beaumont Jan. 24, 2019, no pet. h.) ......... 11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 2

*BH Contractors, LLC v. Helix Energy Sols. Group, Inc*.,
   14-15-01035-CV, 2017 WL 3611887 (Tex. App.—Houston [14th Dist.] Aug. 22,
   2017, pet. denied) ............................................................................................... 11

*Cardinal Pers., Inc. v. Schneider*,
   544 S.W.2d 845 (Tex. Civ. App.—Houston [14th Dist.] 1976, no writ) ................... 9, 10

*Cent. States Logistics, Inc. v. BOC Trucking, LLC*,
   01-16-00693-CV, 2018 WL 5662669 (Tex. App.—Houston [1st Dist.]
   Nov. 1, 2018, no pet.) .......................................................................................... 9, 10

*Cobb v. Caye Publ'g Group, Inc*.,
   322 S.W.3d 780 (Tex. App.—Fort Worth 2010, no pet.) ....................................... 12, 14

*Compass Bank v. Texas Cmty. Bank*,
   DR-09-CV-056-AML-CW, 2010 WL 11506744 (W.D. Tex. Apr. 26, 2010),
   *report and recommendation adopted*, DR-09-CV-056-AML/CW, 2010 WL
   11506745 (W.D. Tex. Sept. 21, 2010) .................................................................. 13, 16

*Crowe v. Henry*,
   43 F.3d 198 (5th Cir. 1995) ................................................................................. 6

*Diligent Texas Dedicated LLC v. York*,
   02-17-00416-CV, 2018 WL 4140637 (Tex. App.—Fort Worth Aug. 30, 2018,
   pet. denied)...................................................................................................... 15

*Evans Consoles Inc. v. Hoffman Video Sys., Inc.*,
   3:01-CV-1333-P, 2001 WL 36238982 (N.D. Tex. Dec. 6, 2001) ........................... 15

*Fantastic Sams Franchise Corp. v. Mosley*,
   CV H-16-2318, 2016 WL 7426403 (S.D. Tex. Dec. 23, 2016)................................. 5

*GE Betz, Inc. v. Moffitt-Johnston*,
   885 F.3d 318 (5th Cir. 2018) .................................................................................. 12

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
   313 F.3d 305 (5th Cir. 2002) .................................................................................. 17

*IKON Office Sols., Inc. v. Furnish*,
   SA-06-CA-434-FB, 2008 WL 11408513 (W.D. Tex. Feb. 11, 2008).............. 11, 12

*In re Gomez*,
   520 B.R. 233 (Bankr. S.D. Tex. 2014) ..................................................................... 9

Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.,
   793 S.W.2d 660 (Tex. 1990)............................................................................. 15, 16

*LasikPlus of Texas, P.C. v. Mattioli*,
   418 S.W.3d 210 (Tex. App.—Houston [14th Dist.] 2013, no pet.)................... 13, 14

*Lockhart v. McCurley*,
   10-09-00240-CV, 2010 WL 966029 (Tex. App.—Waco Mar. 10, 2010, no pet.).... 12

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) .................................................................................... 3

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*,
   289 S.W.3d 844 (Tex. 2009)..................................................................................... 7

*McKissock, LLC v. Martin*,
   267 F. Supp. 3d 841 (W.D. Tex. 2016) ...................................................... 12, 13, 15

*Merritt Hawkins & Associates, LLC v. Gresham*,
   79 F. Supp. 3d 625 (N.D. Tex. 2015),
   *aff'd sub nom. Merritt Hawkins & Associates, L.L.C. v. Gresham*,
   861 F.3d 143 (5th Cir. 2017) .................................................................................. 16

*Neurodiagnostic Consultants, LLC v. Nallia*,
   03-17-00828-CV, 2018 WL 6175389 (Tex. App.—Austin Nov. 27, 2018, no pet. h.) ........... 15

iii

*Oliver v. Rogers*,
   976 S.W.2d 792 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)...................................... 12

*Orthoflex, Inc. v. Thermotek, Inc.*,
   No. 3:10-CV-2618-D, 2011 WL 5879330 (N.D. Tex. Nov. 23, 2011) .................................... 16

*Redi-Mix Sols., Ltd. v. Express Chipping, Inc.*,
   6:16CV298, 2017 WL 4079542 (E.D. Tex. Aug. 24, 2017),
   *report and recommendation adopted*, 6:16-CV-00298-RWS, 2017 WL 4076445
   (E.D. Tex. Sept. 14, 2017) ................................................................................................... 15

*Republic Services, Inc. v. Rodriguez*,
   14-12-01054-CV, 2014 WL 2936172 (Tex. App.—Houston [14th Dist.] June 26,
   2014, no pet.) ............................................................................................................... 9, 16

*Sterner v. Marathon Oil Co.*,
   767 S.W.2d 686 (Tex. 1989)................................................................................................. 16

*Stokes v. Gann*,
   498 F.3d 483 (5th Cir. 2007) ........................................................................................... 2, 7

*TFC Partners, Inc. v. Stratton Amenities, LLC*,
   1:19-CV-58-RP, 2019 WL 369152 (W.D. Tex. Jan. 30, 2019)................................................. 11

*The Burks Group, Inc. v. Integrated Partners, Inc.*,
   07-14-00443-CV, 2015 WL 5766494 (Tex. App.—Amarillo Sept. 28, 2015, no pet.) ........... 15

*TransPerfect Translations, Inc. v. Leslie*,
   594 F. Supp. 2d 742 (S.D. Tex. 2009) ............................................................................. 5, 15

*Tranter, Inc. v. Liss*,
   02-13-00167-CV, 2014 WL 1257278 (Tex. App.—Fort Worth Mar. 27, 2014,
   no pet.) ........................................................................................................................... 15

## Rules and Statutes

Fed. R. Civ. P. 15..................................................................................................................... 17

Tex. Bus. & Com. Code § 15.50 .............................................................................................. 4

Tex. Bus. & Com. Code § 15.51(c) .............................................................................. 5, 11, 15

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff W&O Supply, Inc. ("W&O" or "Company") files this Response to Defendants Brandon Pitre ("Pitre"), Tobi Johnson ("Johnson"), William Terry ("Terry"), William Fuller ("Fuller") and Independence Valve & Supply, LLC's ("Independence") (collectively "Defendants") Motion to Dismiss and Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Doc. 39 & Doc. 39-1] ("Motion") as follows:

## I.      INTRODUCTION

This action arises from the four individual Defendants terminating their employment with W&O, then improperly soliciting the very same customers they sold to and serviced on behalf of W&O, all in violation of their covenants not to compete. Defendants' contention that the Non-Compete Agreements are invalid and cannot be reformed is not supported by the facts or the law.

Defendants do not dispute that they were provided, and did receive, some confidential information from W&O, which constituted consideration sufficient to make their post-employment restrictive covenants "ancillary to or part of otherwise enforceable agreements." They also do not dispute that they are soliciting work from many of the very same customers they sold to on behalf of Plaintiff.  Defendants' only defense to the enforcement of the non-compete agreements is that they are overbroad and cannot be reformed.  Such an argument ignores that the Texas Covenants Not to Compete Act expressly provides that as long as such covenants are "ancillary to or part of otherwise enforceable agreements," should any restriction be unreasonable, *or even missing*, the proper remedy is reformation, not dismissal.

Defendants misunderstand the point of reformation, which customarily requires a court to create terms not found within an original non-compete contract, as the court may find reasonable.

Moreover, reformation can occur now, in conjunction with Plaintiff's Renewed Motion for Preliminary Injunction [Doc. 35]. Thus, Defendants' Motion should be DENIED.

## II.     NATURE AND STAGE OF PROCEEDING

This lawsuit was filed on January 15, 2019. [Doc. 1]. Pursuant to this Court's Order [Doc. 11], the Parties have engaged in limited written and deposition discovery.

On February 25, 2019, Plaintiff filed an Amended Complaint. [Doc. 27]. Defendants filed their Motion to Dismiss Plaintiff's Amended Complaint on March 8, 2019. [Doc. 39].

On March 4, 2019, Plaintiff filed its Renewed Motion for Preliminary Injunction. [Doc. 35]. On March 11, 2019, Defendants filed their Response and Brief in Opposition to Plaintiff's Renewed Motion for Preliminary Injunction. [Doc. 41]. On March 13, 2019, the Parties presented evidence and testimony at a Preliminary Injunction Hearing before this Court.

## III.     STATEMENT OF ISSUES

Defendants have filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Courts review motions under Rule 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).

To avoid dismissal for failure to state a claim, a plaintiff must meet FED. R. CIV. P. 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for

entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc*., 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

Here, Defendants only complain that "…Plaintiff attempts to enforce Non-Compete Agreements that are not only overly broad and unreasonably restrictive, but the covenants are missing the statutorily required time limitation" and that "Plaintiff has not plead [*sic*] the basis for inserting a temporal limitation or from where that limitation should be derived." [Doc. 39-1, at para. 27 and 36]. These alleged deficiencies, as Plaintiff briefs below, are not issues at all in light of the statutory language that provides that as long as such covenants are "ancillary to or part of otherwise enforceable agreements," should any restriction be unreasonable the proper remedy is reformation, not dismissal.

## IV.    RELEVANT FACTS

W&O is a supplier of pipes, valves, fittings, engineered products and automation focused on the maritime industry and ship building. [Doc. 27, ¶ 10].

Pitre was W&O's former Market Leader – Houston, in which he acted as the branch manager of the Houston office. Johnson was W&O's former Operations Manager. Prior to that, she was a senior inside sales person. Fuller was a former Inside Sales Manager. Terry was a former Outside Salesman. [Doc. 27, ¶ 10-13].

As part of their employment with W&O, each of the Defendants executed a Non-Compete Agreement. ***Exhibits A-D***, in which they agreed as follows:

- Employee agrees that, during the term of this employment and in the event of termination (voluntary or involuntary) he/she will not attempt to divert any existing or possible future business of Employer, or assist in any such competition within one hundred (100) miles of any W&O Supply branch operation existing at time of termination of employment.

3

- Employee agrees that he/she will not at any time directly or indirectly, either during or after termination of employment, make use of or disclose to any person, group or organization, any information and/or details including, but not limited to the names or addresses of any employees or customers of Employer, the details or provisions of any written or oral contract or understanding between Employer and any materials, manuals, forms, techniques, methods, or procedures of Employer used by or made available to Employee in the course of his/her employment.

- Employee further agrees that, immediately upon termination of employment, and prior to final compensation, and/or upon request by Employer at any time, he/she will return to Employer any and all materials including but not limited to employee lists, papers, documents or data (including any and all copies thereof) belonging to or relating to the business of Employer.

**Exhibits A-D,** at Paragraphs 2-4**.**

Despite these obligations, Defendants secretly formed a competing business, Independence while still employed by Plaintiff. After they terminated their employment with W&O, they began conducting business directly in competition with W&O, including directly soliciting sales from W&O customers to whom Defendants previously sold on behalf of W&O. [Doc. 27, ¶ 15-17].

## V.     ARGUMENT AND AUTHORITIES

### A.     When a Non-Compete is Enforceable under the Texas Non-Compete Act

The Texas Business and Commerce Code § 15.50(a) provides that

a covenant not to compete is ***enforceable if it is ancillary to or part of an otherwise enforceable agreement*** at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com. Code § 15.50  (emphasis added). Then, Tex. Bus. & Com. Code § 15.51(c) follows with:

If the covenant is found to be ancillary to or part of an otherwise enforceable agreement ***but*** contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise, ***the court shall reform the covenant*** to the extent necessary to cause the limitations

4

contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the promisee and enforce the covenant as reformed....

TEX. BUS. & COM. CODE § 15.51(c) (emphasis added).

Accordingly, the statute plainly instructs that the first inquiry is to determine whether a covenant is ancillary to or part of an otherwise enforceable agreement, ***and then*** assess whether the restrictions protect the business interests of the promisee.

**B.      The Non-Compete Agreements were "Otherwise Enforceable Agreements"**

With regard to the first inquiry, "otherwise enforceable agreements" can emanate from at-will employment so long as the consideration for any promise is not illusory. Here, the covenant not to compete was ancillary to or part of an otherwise enforceable agreement in which W&O promised to, and did, provide Defendants with confidential and proprietary information relating to its customers, its operations, and its business strategy. *See TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 754 (S.D. Tex. 2009) (holding that business goodwill, and confidential or proprietary information, acquisition strategies, knowledge of a unique customer base, and knowledge of the equipment or products used by each of the employer's customers are interests worthy of protection by a non-compete); *see also Fantastic Sams Franchise Corp. v. Mosley*, CV H-16-2318, 2016 WL 7426403, at *4 (S.D. Tex. Dec. 23, 2016) (finding that, when defendant received plaintiff's proprietary and confidential information in the form of training, business models, and operations manuals, such benefits directly gave rise to plaintiff's interest in restraining defendant from competition. Upon this exchange of consideration, the non-compete was a valid ancillary provision).

So the relevant analysis here must be whether Plaintiff had "otherwise enforceable agreements" with Defendants; the answer must be YES. Under Federal Rule of Civil Procedure

12(b)(6), a movant admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts. *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995). Here, significantly, Defendants have admitted to, and have not challenged, the following facts:

- "As a member of the senior management team, Pitre physically met with the W&O executive team one to two times a year for strategy and planning meetings which granted him access to company-wide plans, including original equipment manufacturer (OEM) relationships and pricing levels." [Doc. 27, ¶ 10].

- "Johnson managed the backend operations of W&O's Houston office, from warehousing, logistics, and distribution. She was a senior inside sales person prior to the operations role and in that role, had intimate knowledge of supplier cost information, customer pricing and contract pricing." [Doc. 27, ¶ 11].

- "Fuller had regular communications with W&O customers and learned and knew their needs, cost sensitivity, and purchase history." [Doc. 27, ¶ 12].

- "Terry also had regular communications with W&O customers and learned and knew their needs, cost sensitivity, and purchase history." [Doc. 27, ¶ 13].

- "Defendants were granted access to W&O's confidential information, such as the details or provisions of any written or oral contract or understanding between W&O and customers, and any materials, manuals, forms, techniques, methods, or procedures of W&O. Defendants also had access to W&O's Salesforce customer relationship system, which lists all of W&O's customer contacts and point person within the customer, as well as specific notes from customer visits and discussion points. Additionally, Defendants had access to and knowledge of W&O's cost of materials, and thus, W&O's product margins." [Doc. 27, ¶ 14].[1]

W&O promised to, and did provide confidential information to Defendants. In return, Defendants promised not to use or disclose confidential information or compete with W&O after any termination from W&O. The Non-Compete Agreements were designed to enforce such mutual promises.

Additionally, Defendants are now arguing that the Non-Compete Agreements were merely at-will, illusory contracts, and that the only consideration provided to the Defendants was

---

[1] Additionally, as briefed in its Renewed Motion for Preliminary Injunction, Defendants Pitre and Terry have testified in their depositions to the receipt of W&O confidential or proprietary business information. [Doc. 35, p. 10-11].

continued, at-will employment.[2] This position is not supported by the facts or case law, and is in direct contravention to their admission of the facts contained in Plaintiff's Amended Complaint (as is required to move under Fed. R. Civ. P. 12(b)(6)). *See Stokes*, 498 F.3d at 484. Defendants' new position is premised on the argument that the Non-Compete Agreements do not explicitly promise the exchange of confidential information and thus Plaintiff made no promises in those documents other than continued at-will employment.[3]

Defendants ignore the fact that the Texas Supreme Court has already weighed in on this **exact** argument and rejected it. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 851 (Tex. 2009).[4] In *Mann Frankfort*, as here, the employer did not expressly promise to provide confidential information to its employees.  In that matter, as here, the employees did agree, however, to not to disclose the employer's confidential information.  As a result, the Texas Supreme Court found that there was an implied promise to provide confidential information, and thus the non-competition provision was ancillary to an otherwise enforceable agreement.  *Id.* at 850-851.  The instant case is identical to *Mann Frankfort* in this respect. **Exhibits A-D,** at Paragraph 3.

Then, when Plaintiff ultimately did provide such confidential information, the contract became "non-illusory at that point, and the agreement in issue is otherwise enforceable under the Act…" *Alex Sheshunoff Mgmt. Services, L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006). In *Sheshunoff*, there was no dispute that after the employee's agreement was signed, confidential information was provided and received. *Sheshunoff*, 209 S.W.3d at 647. Accordingly, "[t]here is

---

[2] *See* [Doc. 41, at ¶ 28]; *see also* arguments made at the Preliminary Injunction Hearing on March 13, 2019, [Preliminary Injunction Hearing, 23:4-7].

[3] *See* [Doc. 41, at 14].

[4] Defendants did cite to this case in their motion to dismiss.  *See* Doc. 39-1 at 12, 15.

no sound reason why a unilateral contract made enforceable by performance should fail under the Act." *Id.* at 651.

By virtue of their FED. R. CIV. P. 12(b)(6) filing, the receipt of confidential information is not a contested issue, so like *Sheshunoff*, there is no dispute that after the Non-Compete Agreements were signed, confidential information was provided and received. And by providing Defendants with its confidential information at any time after the execution of the Non-Compete Agreements – which Defendants do not deny receiving – W&O shared information that is worthy of protection by a covenant not to compete, creating an ***enforceable non-compete, ancillary to an otherwise enforceable agreement***.

To the extent that Defendants are also otherwise denying the degree of confidentiality or when such confidential information was received,[5] *Sheshunoff* specifically stated that the Non-Compete Act's "core inquiry" is whether the limitations are reasonable and not greater than necessary, and ***not*** what the court deemed to be "overly technical disputes" over "whether a covenant is ancillary to an otherwise enforceable agreement." "Concerns that have driven disputes over whether a covenant is ancillary to an otherwise enforceable agreement—such as the amount of information an employee has received, its importance, its true degree of confidentiality, and the time period over which it is received—are better addressed in determining whether and to what extent a restraint on competition is justified." *Sheshunoff*, 209 S.W.3d at 655–56. Plaintiff provided Defendants with confidential information – as evidenced by Defendants' own admissions – and they agreed to post-employment restrictions. Indeed, Defendants' arguments[6] that they could have obtained the information elsewhere or that such

---

[5] *See* [Doc. 41, at 6-9].

[6] *See* [Doc. 41, at 6-9].

information was provided before the execution of the Non-Compete Agreements are related to whether the terms of the non-competes impose a greater restraint than necessary, and better suited for assisting this Court in crafting new limitations, as reasonable. *Id.*; *see also In re Gomez*, 520 B.R. 233, 239 (Bankr. S.D. Tex. 2014); *Republic Services, Inc. v. Rodriguez*, 14-12-01054-CV, 2014 WL 2936172, at *5 (Tex. App.—Houston [14th Dist.] June 26, 2014, no pet.) ("Yet even if the compiled information were publicly available, which Republic disputes, the ***non-competition agreement is not invalid merely because the information gained at appellant's expense was generally available to the public*** rather than a 'trade secret.'") (emphasis added).[7]

In accordance with the Texas Supreme Court's instruction that courts should not fixate on the diversion of consideration, this Court should find that the Non–Compete Agreements are ancillary to or part of an otherwise enforceable agreement. Therefore, the first prong of Section 15.50(a) is satisfied. The only question that then remains is whether the covenant is too broad to enforce *as written*.

## C.  Because the Non-Compete Agreements were "Otherwise Enforceable Agreements," if any Limitation Therein is Overbroad, this Court is Required to Reform It

Defendants cite to *Cent. States Logistics, Inc. v. BOC Trucking, LLC*, 01-16-00693-CV, 2018 WL 5662669, at *1 (Tex. App.—Houston [1st Dist.] Nov. 1, 2018, no pet.) and *Cardinal Pers., Inc. v. Schneider*, 544 S.W.2d 845, 846 (Tex. Civ. App.—Houston [14th Dist.] 1976, no writ) to support their argument that the Non-Compete Agreements are unenforceable. These cases – both about tolling provisions causing restrictive periods that are ascertainable only by hindsight – speak nothing about a court's reformation abilities. For example, the ***defendant***

---

[7] Plaintiff stresses however that the undisputed evidence presented at the March 13, 2019 hearing was that it provided material, significant and repeated confidential information to the defendants during the course of their employment with Plaintiff.

9

*promisor* in *Cent. States Logistics*, after losing the breach of contract claim at trial, filed a motion to reform or void the judgment, arguing the covenant not to compete was unenforceable. The plaintiff in that case actually ***opposed*** the motion to reform, arguing that the non-compete at issue was enforceable as written and did not need to be reformed.[8]  On appeal, the court held that the restrictive covenants were ***unenforceable*** "***as written***," and sustained the defendant promisor's cross-appeal. The analysis ended there. As there was no request to reform the agreement, the court of appeals did not consider that issue, much less hold that the agreement could not be reformed. *Cent. States Logistics, Inc.*, 2018 WL 5662669, at *5.

Then, the ruling in *Cardinal Pers., Inc.* – issued more than a decade prior to the enactment of the Covenants Not to Compete Act – was also that the tolling provision, extending any restrictions upon a violation of the non-compete, was overbroad. However, the actual non-compete covenant was not an issue in the opinion, as the restrictive period expired during appeal, and the denial of temporary injunction was affirmed. 544 S.W.2d at 848.  In sum, Defendants' cases do not offer proper guidance for this matter before this Court.

This case before this Court ***does not concern a tolling provision*** as in *Cent. States Logistics* or in *Cardinal Pers., Inc.* Further, these are not the only two opinions concerning tolling provisions in restrictive covenants. Defendants ignore Judge Biery of the Western District of Texas, who presents a much more apt opinion in *IKON Office Sols., Inc. v. Furnish*, SA-06-CA-434-FB, 2008 WL 11408513, at *1 (W.D. Tex. Feb. 11, 2008), where like *Cent. States Logistics* and *Cardinal Pers., Inc.*, the relevant non-compete agreement contained a tolling provision that was found to be indefinite, and thus unenforceable as written. The court removed

---

[8] *See e.g., Cent. States Logistics*, 01-16-00693-CV, Plaintiff's Response to Reform or Void, Doc. 6781064; Plaintiff's Amended Response to Motion to Reform or Void, Doc 68246576; Plaintiff's Response to Defendants' Motion to Modify, Correct, or Reform Judgment, Doc. 71546666.

the tolling provision (the faulty, "indefinite" provision), and both the time and geographic limitations were limited to restrictions the court found reasonable. 2008 WL 11408513, *9. Clearly, indefinite clauses may be reformed.

Defendants offer no support for their argument that "reformation extends only to existing terms."[9] On the contrary, the case law is clear that just because time or area of a non-compete agreement is indefinite or omitted entirely, does not make the agreement unenforceable or incapable of reformation. A non-compete is not just any mere contract, and comparisons to principles of contract law, as Defendants have done, is misplaced;[10] pursuant to TEX. BUS. & COMM. CODE 15.51(c), reformation is ***mandatory*** where a noncompete or nonsolicitation agreement is ancillary to an otherwise enforceable agreement, as is the case here. TEX. BUS. & COM. CODE § 15.51(c); *TFC Partners, Inc. v. Stratton Amenities, LLC*, 1:19-CV-58-RP, 2019 WL 369152, at *6 (W.D. Tex. Jan. 30, 2019) ("Texas law does require courts to reform unreasonable agreements… and it is possible that ***one or more of the defendants might be in breach of a reasonably reformed agreement***") (emphasis added). In contrast, reformation of a contract that is not a non-compete requires a mutual mistake[11] – a requirement that is not necessary for reformation under TEX. BUS. & COMM. Code 15.51(c).

Rather, as Defendants acknowledge, TEX. BUS. & COM. CODE § 15.50 requires that non-competes contain "limitations as to time, geographical area, and scope of activity to be restrained." [Doc. 39-1, at ¶ 30]. Thus, analyses on limitations as to geographical area and scope

---

[9] [Doc. 39-1, at 38].

[10] [Doc. 39-1, at 11, 13-14].

[11] *BH Contractors, LLC v. Helix Energy Sols. Group, Inc.*, 14-15-01035-CV, 2017 WL 3611887, at *3 (Tex. App.—Houston [14th Dist.] Aug. 22, 2017, pet. denied); *Barclay v. Richey*, 09-17-00026-CV, 2019 WL 302661, at *5 (Tex. App.—Beaumont Jan. 24, 2019, no pet. h.) ("Parol evidence is admissible to show that the writing, because of a mutual mistake, incorrectly reflects the true agreement, and that the equitable remedy of reformation is available to correct such a mutual mistake in the written instrument.").

of activity must be analogously applied to limitations as to time. If, as Defendants claim, that "reformation extends only to existing terms" (Doc. 39-1, at ¶ 38), Defendants completely fail to address how numerous Texas courts have resolved missing geographic limitations. In complete contrast to Defendants' position, multiple courts have found the absence of an express limitation[12] may be cured:

- *IKON Office Sols.,* 2008 WL 11408513, at *9 (adopting the recommendation that a time restriction creating an ***indefinite restrictive period*** was unreasonable, and thus the agreement was not enforceable as written; the unreasonable provisions were "removed and replaced by… time limitation and… geographic limitation.");

- *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 329 (5th Cir. 2018) ("…covenants not to compete and non-solicitation agreements are not void or unenforceable simply because they ***lack an express geographic limitation***.");

- *Cobb v. Caye Publ'g Group, Inc*., 322 S.W.3d 780, 783 (Tex. App.—Fort Worth 2010, no pet.) (reforming an agreement with ***no geographic limitation***);

- *Lockhart v. McCurley*, 10-09-00240-CV, 2010 WL 966029, at *2 (Tex. App.—Waco Mar. 10, 2010, no pet.) (***no geographical limit***, but the trial court's limitation to former employer's clients was a sufficient alternative to a geographical area);

- *B.J. Software Sys., Inc. v. Osina*, 827 S.W.2d 543, 546 (Tex. App.—Houston [1st Dist.] 1992, no writ) (non-compete ***failed to contain time and territorial restrictions***. The trial court erred in denying the employer's request for reformation to the extent necessary to comply with the statute.)

- *McKissock, LLC v. Martin*, 267 F. Supp. 3d 841, 855–56 (W.D. Tex. 2016) (finding that the noncompete prohibited competition "***in any manner*** with any business or practice which is in competition with [McKissock]" was overbroad, and reforming the agreement to prohibit the defendant from providing services to a competitor that are similar to those that she provided to McKissock)

In fact, Defendants' counsel admitted at the Preliminary Injunction Hearing that there is no case law prohibiting courts from creating a time limitation, as a court may find reasonable. *See* [Preliminary Injunction Hearing, 20:24-21:8].

---

[12] In fact, for a sale of a business, "***the lack of a fixed time limitation cannot, in and of itself, render a covenant unreasonable***." *Oliver v. Rogers*, 976 S.W.2d 792, 800 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).

Plaintiff's position is also erroneous because reformation under the Non-Compete Act *regularly* requires a court to create new limitations, as reasonable. For example, in *McKissock*, the original non-compete only provided that the former employee would not "be employed or retained by, participate in or be connected in any manner with any business or practice which is in competition with" the former employer. The new, reformed clause prohibited the former employee "from providing services to a competitor that are similar to those that she provided to" her former employer, which was a brand new term, authored by the court. *McKissock*, 267 F. Supp. 3d at 855–56.

Similarly, in *Compass Bank v. Texas Cmty. Bank*, DR-09-CV-056-AML-CW, 2010 WL 11506744, at *1 (W.D. Tex. Apr. 26, 2010), *report and recommendation adopted*, DR-09-CV-056-AML/CW, 2010 WL 11506745 (W.D. Tex. Sept. 21, 2010), the original agreement prohibited the former employee from competing "in any place that the [employer] or any of its subsidiaries conducts business during [the employee's] employment." The court reformed the geographic scope of the covenant to Val Verde County only. *Id*. In both *McKissock* and *Compass*, it was immaterial that the original agreements provided fixed limitations; the ultimate clauses did not reflect limitations contained anywhere in the respective original agreements, but ones designed by the courts. There is no requirement that a court's reformed limitations be based on existing limitations. Defendants' argument that "there is no authority for adding non-existent terms to reform an agreement"[13] is clearly wrong.

Further, Defendants' reliance on *LasikPlus of Texas, P.C. v. Mattioli*, 418 S.W.3d 210, 220 (Tex. App.—Houston [14th Dist.] 2013, no pet.) is misplaced. *LasikPlus* involved a physician buy-out provision that is specially provided under TEX. BUS. & COMM. CODE 15.50(b).

---

[13] [Doc. 39-1, at 15].

13

Unlike other covenants not to compete, "there is no indication in section 15.50 that the legislature intended to invest courts or arbitrators with the authority to reform noncompete covenants to create buy-out provisions. To the contrary, the section as a whole provides that if a noncompete covenant involving a physician does not have a buy-out clause, it is not enforceable." *LasikPlus*, 418 S.W.3d at 220. The matter before this Court does not involve a physician buy-out provision, and thus, case law such as *IKON*, *GE Betz*, and *Cobb* are more applicable precedent.

Defendants further offer no support for their argument that a complaint must have information to assist a court in determining what would be a reasonable time period or geographic area to which a promisor is obligated.[14] This too, is contrary to case law, wherein non-competes, even in the absence of an express limitation, were reformed *after* a presentation of testimony and evidence. *See e.g.*, *Cobb*, 322 S.W.3d at 784 (reforming a covenant with no geographic restriction, after temporary injunction testimony on defendant's activities).

Finally, Defendants' allegations that Plaintiff previously acknowledged the unenforceability of the Non-Compete Agreements is only a distraction. [Doc. 41, at 7].[15] Non-competition agreements are analyzed on a case-by-case basis, taking into account individual, fact specific circumstances. *See Am. Nat. Ins. Co. v. Cannon*, 86 S.W.3d 801, 808 (Tex. App.— Beaumont 2002, no pet.). The record before this Court 1) does not explain the circumstances regarding Plaintiff's alleged acknowledgement, and 2) does not identify any facts relating to other employees' pre- and post- W&O employment activities. Nevertheless, having a restrictive covenant that is allegedly unenforceable as written does not conclude this matter; non-

---

[14] [Doc. 39-1, at 13].

[15] Additionally, W&O maintains that the email introduced by the Defendants in support of this argument should not be considered by this Court. *See* Doc. 45.

competition clauses that are unenforceable as written must still be reformed. TEX. BUS. & COM. CODE § 15.51(c).

In short, Section 15.51(c) permits a court to reform a covenant not to compete to the extent necessary to render its limitations reasonable, and enforce the covenant as reformed. Such reformation of non-competes is regular, common practice,[16] which may be done at a preliminary injunction hearing.[17] Otherwise, where Defendants' sole argument is that restrictions are unreasonable and/or missing, the statutory remedy is reformation, not dismissal.

## D.     Upon this Court's Reformation, there is a Valid Contract that may Support a Tortious Interference Claim

To establish a claim for tortious interference with contract under Texas law, a plaintiff must demonstrate: "(1) there was a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of plaintiff's damage, and (4) actual damage or loss occurred." *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 664 (Tex. 1990) .

---

[16] *See infra* n. 3; *see also Accruent, LLC v. Short*, 1:17-CV-858-RP, 2018 WL 297614, at *7 (W.D. Tex. Jan. 4, 2018) (reforming the covenant to prohibit defendant from competing or being employed by a competitor only if the role in which he competes or is employed was the same or substantially similar to the roles he performed for plaintiff); *Evans Consoles Inc. v. Hoffman Video Sys., Inc.*, 3:01-CV-1333-P, 2001 WL 36238982, at *8 (N.D. Tex. Dec. 6, 2001) (reforming the covenant to enjoin defendant from soliciting those customers with whom he previously worked. The covenant was also reformed, because of a lack of geographic restriction, to enjoin defendant from selling to any customer in the six states in which he previously worked.).

[17] *McKissock, LLC v. Martin*, 267 F. Supp. 3d 841, 857 (W.D. Tex. 2016) (reforming at the preliminary injunction stage); *TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 756 (S.D. Tex. 2009) (reforming at the preliminary injunction stage); *Redi-Mix Sols., Ltd. v. Express Chipping, Inc.*, 6:16CV298, 2017 WL 4079542, at *2 (E.D. Tex. Aug. 24, 2017), *report and recommendation adopted*, 6:16-CV-00298-RWS, 2017 WL 4076445 (E.D. Tex. Sept. 14, 2017) (discussing the agreement that was reformed at the injunction stage); *Neurodiagnostic Consultants, LLC v. Nallia*, 03-17-00828-CV, 2018 WL 6175389, at *1 (Tex. App.—Austin Nov. 27, 2018, no pet. h.) (discussing the agreement that was reformed at the injunction stage); *Diligent Texas Dedicated LLC v. York*, 02-17-00416-CV, 2018 WL 4140637, at *6 (Tex. App.—Fort Worth Aug. 30, 2018, pet. denied), *reh'g denied* (Sept. 20, 2018) (the trial court reformed the covenants not to compete and rendered the temporary injunction based on that reformation); *Tranter, Inc. v. Liss*, 02-13-00167-CV, 2014 WL 1257278, at *10 (Tex. App.—Fort Worth Mar. 27, 2014, no pet.) ("…reformation is not only a final remedy"); and *The Burks Group, Inc. v. Integrated Partners, Inc.*, 07-14-00443-CV, 2015 WL 5766494, at *3 (Tex. App.—Amarillo Sept. 28, 2015, no pet.) (the court did not err in reforming the covenant at the TI hearing).

Defendants argue that Plaintiff failed to state a claim for tortious interference with a contract against Independence because Defendants' non-compete agreements are unenforceable as written. However, once this Court reforms the Non-Compete Agreements as it may find necessary, the covenants became reasonable in nature creating a valid contract, and therefore, enforceable and subject to interference. *Compass Bank v. Texas Cmty. Bank*, DR-09-CV-056-AML-CW, 2010 WL 11506744, at *4 (W.D. Tex. Apr. 26, 2010), *report and recommendation adopted*, DR-09-CV-056-AML/CW, 2010 WL 11506745 (W.D. Tex. Sept. 21, 2010) (upon reformation of a formerly enforceable contract, a claim for tortious interference of contract could proceed); *Fowler*, 793 S.W. 2d at 665 (same); *Orthoflex, Inc. v. Thermotek, Inc*., No. 3:10-CV-2618-D, 2011 WL 5879330, at *1 (N.D. Tex. Nov. 23, 2011) (same); *Republic Services, Inc. v. Rodriguez*, 14-12-01054-CV, 2014 WL 2936172, at *9 (Tex. App.—Houston [14th Dist.] June 26, 2014, no pet.) (same).

Defendants formed Independence while still employed by W&O, and upon terminating their employment with W&O, they began soliciting customers for Independence and took advantage of proprietary information received from W&O and goodwill developed on behalf of W&O. [Doc. 27, ¶ 15-17]. Independence is not entitled to its own subjective determination as to the enforceability of the Non-Compete Agreements; the Texas Supreme Court specifically instructed that "the unenforceability of a contract is no defense to an action for tortious interference with its performance. A promise may be a valid and subsisting contract even though it is voidable. Thus third persons are not free to interfere tortiously with performance of the contract before it is avoided." *Sterner v. Marathon Oil Co*., 767 S.W.2d 686, 689 (Tex. 1989) (internal citations omitted); *see also Merritt Hawkins & Associates, LLC v. Gresham*, 79 F.

Supp. 3d 625, 633 (N.D. Tex. 2015), *aff'd sub nom. Merritt Hawkins & Associates, L.L.C. v. Gresham*, 861 F.3d 143 (5th Cir. 2017).

As briefed above, this Court must statutorily reform the Non-Compete Agreements, if necessary. Upon doing so, Plaintiff – if it does not already – has contracts that Independence has and has continued to tortiously interfere with. Defendant's Motion must be DENIED.

## VI.   MOTION FOR LEAVE TO AMEND

To the extent this Court find it necessary, and to the extent that Defendants' grievances are not already addressed in W&O's Amended Complaint [Doc. 27], Plaintiff seeks leave to amend its pleading to unquestionably state that its Non-Compete Agreements are valid, enforceable restrictive covenants that are "ancillary to or part of an otherwise enforceable agreements." FED. R. CIV. P. 15; *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal").

## VII.   PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff W&O Supply, Inc. prays that that Defendant's Motion be DENIED, and such further relief to which it may show itself justly entitled.

Respectfully submitted,

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

By     _/s/ James M. Cleary, Jr._

James M. Cleary, Jr.
State Bar No. 00783838
*cleary@mdjwlaw.com*
808 Travis, 20th Floor
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

**ATTORNEY-IN-CHARGE FOR PLAINTIFF,
W&O SUPPLY, INC.**

**OF COUNSEL**

W. Jackson Wisdom
State Bar No. 21804025
*wisdom@mdjwlaw.com*
Sylvia Ngo
State Bar No. 24067100
*ngo@mdjwlaw.com*
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
808 Travis, 20th Floor
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of foregoing document has been forwarded *via* ECF, on this the 20th day of March, 2019:

Christopher L. Johnson                    ***Via Email: chris@johnson-attorneys.com***
Johnson & Associates
Attorneys at Law, PLLC
303 East Main Street, Suite 100
League City, Texas 77573

_/s/ James M. Cleary, Jr._

James M. Cleary, Jr.